OPINION
This timely appeal arises out of Appellant, Raymond Flesch's conviction, after a trial to the court, for aggravated arson in violation of R.C. 2909.02 (A) (1) (B). Appellant contends that the trial court improperly admitted evidence concerning the results of Appellant's polygraph examination. Appellant also argues that his conviction should be set aside because the prosecution failed to disclose the fact that two witnesses for the prosecution were under criminal investigation during Appellant's trial. Lastly, Appellant submits that his conviction was against the manifest weight of the evidence produced at trial. For the following reasons, this Court affirms Appellant's conviction.
Appellant was an employee of ABC Hood Cleaning Company owned by Frank and Ron Lordi. (Tr. p. 213). Frank Lordi and his wife owned residential property located at 23 W. Florida Avenue, Youngstown, Mahoning County, Ohio. (Tr. pp. 212, 214). This property was a two story brick duplex with one apartment upstairs and one apartment downstairs. Frank Lordi used this property as a source of rental income. (Tr. p. 212). At some time in late May or early June 1994, Frank Lordi became aware that the upstairs apartment at this property was in need of substantial cleaning and other work to make it suitable for further occupancy by a prospective tenant. (Tr. p. 217). Consequently, his brother arranged for Appellant to clean this property. Appellant was hired along with another individual identified as Frank Franklin. (Tr. p. 248)
On June 18, 1994, Appellant, accompanied by Mr. Franklin and Scott Riley, a minor and relative of Appellant, arrived at 23 W. Florida Avenue to begin cleaning. (Tr. p. 248). At approximately 2:00 p.m., Appellant and his two companions left the property to take a break. (Tr. p. 141). At approximately 2:51 p.m., the Youngstown Fire Department received an alarm indicating that the house located at 23 W. Florida Avenue was on fire. (Tr. p. 92). Shortly thereafter, ABC Hood Cleaning Company received a telephone call indicating that the property was burning. (Tr. p. 770). Appellant and his two companions returned to the scene where approximately twenty-nine fire fighters were in the process of extinguishing the fire. (Tr. p. 141).
As a result of the subsequent investigation, the Grand Jury returned a secret indictment dated April 21, 1995 charging Appellant with the crime of aggravated arson. (D. 1). On September 27, 1995, Appellant, his legal counsel and the prosecutor entered into a written agreement providing for the admissibility of a polygraph test to be taken by Appellant. (D. 30). This agreement was presented to the court for its approval which was granted. The agreement provided that if Appellant "passed" the polygraph examination, the prosecution would dismiss the case against Appellant. If, however, Appellant "failed" the polygraph examination the results of that examination would be admissible as evidence against Appellant.
On October 13, 1995, Appellant submitted to and "failed" the polygraph examination. (Tr. pp. 404, 410). The Appellant filed a Motion to Suppress the results of the polygraph examination on May 3, 1996, which the court overruled. (D. 76) On May 9, 1996, Appellant waived his right to a jury trial and the case was tried to the court. (D. 90). The trial court found Appellant guilty of aggravated arson on May 16, 1996. (D. 97). On June 14, 1996, Appellant was sentenced to a prison term of ten to twenty-five years. (D. 99). Appellant filed his Notice of Appeal on the same day.
In his first assignment of error, Appellant argues:
 "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE POLYGRAPH EXAMINATION ADMINISTERED TO DEFENDANT ON OCTOBER 13, 1995."
Appellant's first assignment of error presents three related issues concerning the admissibility of polygraph results. As these issues require separate consideration, they will each be discussed in turn.
 A. Necessity of Independent Trial Court Review of the Polygraph's Reliability
First, Appellant contends that the trial court was obligated to conduct an independent review of the polygraph examiner's qualifications as well as a review of the conditions surrounding the actual administering of the examination. Appellant maintains that this independent judicial examination was a condition precedent to the admissibility of the polygraph results in order to counter a perceived threat of misuse and over-valuation of the polygraph evidence by the jury.
The leading case in Ohio pertaining to the admissibility of polygraph results is State v. Seoul (1978), 53 Ohio St.2d 123. In that case the Ohio Supreme Court held that evidence of a polygraph examination and its results are admissible in a criminal trial for purposes of corroboration or impeachment, provided the following conditions are observed:
 "(1) The prosecuting attorney, defendant and his counsel must sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either the defendant or the state.
 "(2) Notwithstanding the stipulation, the admissibility of the test results is subject to the discretion of the trial judge, and if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.
 "(3) If the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross examine the examiner respecting:
"(a) the examiner's qualifications and training;
"(b) the conditions under which the test was administered;
 "(c) the limitations of and possibilities for error in the technique of polygraphic interrogation; and,
 "(d) at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.
 "(4) If such evidence is admitted the trial judge should instruct the jury to the effect that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged, and that it is for the jurors to determine what weight and effect such testimony should be given."
Id. at syllabus, citing with approval State v. Valdez (1962),91 Ariz. 274, 371 P.2d 894. With this holding, the Ohio Supreme Court adopted a qualified acceptance of polygraph results provided that the above conditions were complied with. Id. at 132. The qualifier is due to the fact that there is an expressed reservation of discretionary power in the trial judge to overrule a stipulation, even if all the conditions are complied with. Id.
One condition which is notably absent is the need for the trial court to conduct an independent review concerning the polygraph examiner's qualifications and the circumstances surrounding the examination itself. Appellant cites to no authority, and our own research has revealed no authority, which would warrant such a conclusion.
Notwithstanding the absence of this condition to the admissibility of polygraph results, Appellant maintains that an independent review is necessary in order for the judge to exercise his or her discretionary power. Appellant's position is premised on his general assertions regarding the unreliability of polygraph examinations.
Appellant's argument demonstrates a misunderstanding of the qualified acceptance of polygraph results in Ohio. The holding in Souel was based upon the recognition of the right of defendants to make tactical choices regarding their defense rather than a finding that, "the lie detector evidence was reliable." State v.Woodruff (1983), 10 Ohio App.3d 326, 327. Appellant made a tactical choice when he agreed to submit to the polygraph examination. The stipulation entered into between the State and Appellant called for the charges to be dismissed had Appellant "passed" the test.
Appellant nonetheless maintains that had an independent review of the polygraph been conducted by the trial court, Appellant would be able to present evidence concerning an alleged prior polygraph examination Appellant "passed" and which revolved around the same facts as the polygraph at issue before us. Appellant further argues that he should have been allowed to cross examine the polygraph examiner regarding the alleged earlier polygraph in an attempt to demonstrate the unreliability of polygraphs in general. In a final attempt to attach error in the trial court's failure to hold a hearing regarding the polygraph at issue, Appellant points to the fact that his own failure to disclose the prior polygraph to the polygraph examiner at issue here is a violation of the disclosure element of the stipulation.
As a preliminary matter, there is no basis to allow the alleged prior polygraph into evidence. It is clear after a review of the holding in Souel that, "the trial court cannot admit the results of polygraph tests into evidence simply at an accused's request . . . such results are admissible only if both theprosecution and defense jointly stipulate that an accused willtake a polygraph test and that the results will be admissible."State v. Jamison (1990), 49 Ohio St.3d 182, 190 (emphasis added). As the alleged prior polygraph was not the subject of a stipulation between the State and Appellant, there is no basis for its admissibility.
Paragraph 5 of the stipulation entered into between the parties contains a provision requiring the Appellant to disclose to the polygraph examiner all, "charts of and questions asked of any prior polygraph administered to this defendant concerning this case." (D. 30). Appellant argues that since he, himself violated this provision of the stipulation, the stipulation should be set aside.
This Court finds Appellant's argument unimpressive. The rule of invited error exists for precisely this type of situation. "The rule of invited error, a corollary of the principle of equitable estoppel, prohibits a party who induces error in the trial court from taking advantage of such error on appeal." Woodruff, supra
at 327. The trial court properly barred Appellant from attempting to set aside a stipulation that he knowingly and voluntarily entered into by willfully violating one of the stipulated conditions.
Finally, Appellant argues that the trial court had discretion to either accept the polygraph evidence or exclude it. Appellant, however, fails to demonstrate where this discretion was abused. Our review of the record also failed to produce any indication of an abuse of discretion. The trial court reviewed and approved the stipulation between the parties. The court allowed Appellant to take the polygraph under the conditions stipulated and allowed oral argument regarding Appellant's Motion to Suppress. (Tr. pp. 9-40). Based on the facts in the record, we find that Appellant's first issue contained within his first assignment of error lacks merit.
 B. Requirement that Defendant Testify Prior to Admission of Polygraph Results
Appellant next argues that even if the results of the polygraph are admissible, they may only be used to corroborate or impeach the testimony of the subject of the polygraph, i.e., Appellant. Since Appellant did not testify in his own defense, the argument continues, the polygraph results may not be received in evidence. Appellant cites the holding in Souel, supra, as support for the contention that, "it is well established that impeachment or corroboration comes into play if and only if the subject of that testimony takes the stand." (Appellant's Brief, p. 11)
Appellant's reliance on Souel for this proposition is baseless. In Souel, the State was allowed to use the polygraph results in its case-in-chief. This was obviously done before the defendant testified.
In Souel, the prosecution first called a pathologist to testify as to the medical evidence regarding the victim's death. Id. at 126. After the pathologist testified, the prosecution called another witness who testified that he had seen the defendant with the victim moments before the victim's death. Id. After these witnesses testified, the prosecution called the polygraph examiner to testify as to the results of the defendant's polygraph examination in corroboration of the prosecution'stheory of the case. Id. (emphasis added).
In upholding the trial court's decision to allow the polygraph examiner's testimony during the prosecution's case in chief, the Souel court held that, "there was substantial evidence tending to indicate that appellant committed the offense for which he was convicted, and thus the polygraph evidence was merely corrobative." Id. at 134. It is unmistakable that, assuming theSouel factors are complied with, the polygraph may be used by the prosecution to corroborate its case.
In the case at bar, the trial court noted for the record that the results of the polygraph test did "not prove any elements of the charge herein, however such failure of the polygraph test does serve to corroborate the charge rather than to impeach it." (D. 97). Appellant's position that corroboration and/or impeachment refers only to corroboration and/or impeachment of Appellant's own testimony reflects his basic misunderstanding of the holding in Souel.
Appellant further contends that the admission of polygraph results before he took the stand violated his constitutionally protected rights to, ". . . trial by jury, to confront his witnesses and to avoid self-incrimination." (Appellants Brief, p. 11).
This contention ignores the exact language of the stipulation signed by Appellant, Appellant's legal counsel, and approved by the trial court. The stipulation provides that:
 "prior to signing this entry and agreeing thereby to submit to polygraph testing, the defendant has been fully advised of his constitutional and statutory rights and by signing this entry he knowingly, intelligently and voluntarily waives his right to remain silent and his right to seek advice of counsel during any stage of this administration of the polygraph test procedure. Admissions or other inculpatory statements made by the defendant during testing shall be admissible and may be testified to during the trial of this cause."
(D. 30). In this case, Appellant exercised his ability to waive his Fifth Amendment rights. See, State v. Jenkins (1984), 15 Ohio St.3d 164
(holding that a defendant may effectively waive his Fifth Amendment rights).
C. Requirement of Independent Substantive Evidence
Appellant maintains that the results of the polygraph examination should only be admitted for impeachment or corroboration if there exists some independent substantive evidence that would tend to indicate that Appellant committed the crime as charged in the indictment. Appellant suggests that this independent evidence does not exist and therefore the polygraph results should have been excluded.
This Court notes that the holding in Souel does not require, "independent substantive evidence" prior to admitting the results of a polygraph examination. Appellant's proposition quotes obiter dicta and not the syllabus of that case. It is well settled that the law, as defined by the Ohio Supreme Court, is found in the syllabus of the case. DeLozier v. Sommer (1974), 38 Ohio St.2d 268,271; see also S.Ct.R.Rep.Op. 1 (B).
Notwithstanding the fact that the trial judge was not required to find, "independent substantive evidence" concerning Appellant's guilt of the crime charged prior to admitting the polygraph results, we find that there was sufficient evidence in the record to allow the trial judge to so conclude. The trial judge found from the evidence that an arson occurred at 23 W. Florida Ave. on June 18, 1994; that there was a serious risk of physical harm to persons; that Appellant had access to the building; that Appellant had the opportunity and the ability to start the fire and that Appellant had bragged to a witness who testified at trial that Appellant had started the fire. (D. 97).
While the Appellant argues that the witness cannot be believed and that there are less inculpatory interpretations to the evidence, this argument attacks the credibility of the witness and the weight to be given to the evidence. As this case was tried to the court after Appellant waived his right to a trial by jury, the trial judge sat as the trier of fact.
It is a basic tenet of appellate procedure that a reviewing court will not overrule the judgment of the trial court if it is supported by competent credible evidence. State v. Guysinger
(1993), 86 Ohio App.3d 592, 594; see also, State v. Awan (1986),22 Ohio St.3d 120, 123 (holding that an appellate court may not substitute its judgment for that of the trier of fact.). There is also a presumption that the findings of the trial court are correct because the trial judge is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections and to use such observations in weighing the credibility of the testimony. Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 79. Appellant cites to no evidence in the record to overcome this presumption.
Appellant next argues that the admission of the polygraph results into evidence was reversible error due to its prejudicial effect upon the jury as well as the risk of imputing more credibility upon witnesses whose testimony is consistent with the polygraph results.
We note that this case was tried to the court, and therefore, Appellant's fear of the jury being misled by the polygraph results are unfounded. It is apparent from the record that the trial judge was not moved by the polygraph results and those results did not lend themselves to an increased air of credibility of the prosecution's witnesses. The trial judge is on record as stating that he did not trust polygraphs and relegated the results of the polygraph examination to the role afforded them pursuant to Souel:
 "Although this court is of the opinion that polygraph results are scientifically unreliable and should be cautiously considered and given little or no evidentiary value, the Defendant herein stipulated to the admissibility of his polygraph test. Defendant's failure of that test does not prove any of the elements of the charge herein, however, such failure of the polygraph test does serve to corroborate the charge rather than impeach it."
(D. 97; see also, Tr. p. 30). Based on the evidence in the record, Appellant has failed to overcome the presumption that "in a bench trial in a criminal case the court considered only the relevant material and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." Statev. Post (1987), 32 Ohio St.3d 380, 384.
For all of the above mentioned reasons, we find that Appellants arguments are not well taken and accordingly overrule his first assignment of error.
In his Second Assignment of Error, Appellant argues:
 "THE JUDGMENT OF THE TRIAL COURT RELIED IN LARGE PART ON THE TESTIMONY OF TWO WITNESSES WHO THE STATE FAILED TO DISCLOSE WERE UNDER INVESTIGATION FOR FELONY CHARGES FOR WHICH THESE WITNESSES WERE EACH SUBSEQUENTLY INDICTED ONE MONTH FOLLOWING THE TRIAL."
Appellant argues that during his trial the prosecution failed to disclose that two of the witnesses called to testify against him were under criminal investigation. Appellant suggests that the failure of the prosecution to disclose this fact impaired Appellant's ability to effectively cross-examine these witnesses to show how the investigation may have affected their motivation, bias or prejudice in regard to their testimony against Appellant. Appellant contends that the prosecution's failure to disclose this fact presents a myriad of Constitutional violations.
An appellate court is limited in its review to the material contained in the record. Ohio App. R. 12. As such, our review of this assignment is confined to the legal and factual matters that are part of the record before this Court. State v. Peagler
(1996), 76 Ohio St.3d 496 (holding that a court of appeals cannot consider the issue for the first time without the trial court's having had the opportunity to address the issue). It is equally clear that a reviewing court may not add matter to the record on appeal and then decide the appeal on the basis of that new matter. Roberts v. Bank of America (1995) 107 Ohio App.3d 301. To do so would violate one of the most basic tenets of appellate practice. James v. Trumbull Co. Bd. of Education (1995),105 Ohio App.3d 392.
Appellant's entire assignment is premised upon factual allegations found nowhere within the record before us. There is no evidence in this record that there was an investigation of the two witnesses at issue, no evidence in this record that the prosecution was aware of the alleged investigation and no indication anywhere in this record that the trial judge had occasion to visit this issue. As such, this Court may not pass on the merits of this assignment of error and it is therefore overruled.
Appellant's third and final Assignment of Error provides as follows:
 "THE TRIAL COURT'S DETERMINATION THAT DEFENDANT WAS GUILTY OF THE CHARGE WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant argues that since there is no direct physical evidence indicating Appellant's involvement in the crime charged in the indictment, the prosecution failed to prove its' case against Appellant beyond a reasonable doubt. In support of this argument, Appellant points to the fact that there was some dispute as to the exact origin of the fire inside the apartment and that the chief prosecution witness who testified against Appellant allegedly overheard Appellant admit to his involvement in the crime under less than reliable circumstances. These facts, Appellant argues, lead to the conclusion that the verdict against him was against the manifest weight of the evidence.
The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in trial to support one side of the issue rather than the other. State v. Tompkins
(1997), 78 Ohio St.3d 380, 387. There is no doubt that circumstantial evidence is sufficient to support a conviction.State v. Nicely (1988), 39 Ohio St.3d 147. Indeed, in Ohio the trier of fact is free to give as much weight, if not more, to circumstantial evidence as it may choose to give to direct evidence. State v. Jenks (1991), 61 Ohio St.3d 259, 272, citingState v. Lott (1990), 51 Ohio St.3d 160, 167.
The role of this Court, in reviewing whether a given verdict is against the manifest weight of the evidence, is to determine if the trier of fact "lost its way." Tompkins, supra at 387. Thus, this Court will not interpret the evidence analyzed by the trier of fact. Our inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra at 273, citingJackson v. Virginia, (1979), 443 U.S. 307, 319. We will exercise our discretionary power to grant a new trial only in exceptional cases and only where the evidence weighs heavily against the conviction. Tompkins, supra at 387. This is not such a case.
During the trial to the court, the trial judge was presented with evidence that a fire was set at 23 W. Florida Avenue. The evidence indicated that the fire was intentionally set. (Tr. p. 105). Evidence was presented to show that the fire posed a great risk of harm to the fire fighters responding to the scene. (Tr. Pp. 92, 93, 97). There was also evidence to support the conclusion that Appellant had the ability and opportunity to set the fire. (Tr. pp. 141, 248). A prosecution witness testified, consistent with a statement he gave fire investigators, that Appellant had told him that Appellant had set the fire and even drove the witness to show this witness the house that he burned down. (Tr. pp. 165, 195, 197). The results of Appellant's polygraph examination tended to corroborate rather than impeach the prosecution's case against Appellant. (Tr. pp. 410, 417).
When reviewing the record before us, we are unable to conclude that the trial judge, sitting as the trier of fact, "lost his way." There is ample evidence in the record to permit a reasonable mind, after viewing the evidence in a light most favorable to the prosecution, to conclude that the essential elements of the crime had been proven against Appellant beyond a reasonable doubt. As such, Appellants third assignment of error is overruled.
For all of the foregoing reasons, we find that the assignments of error advanced by Appellant are without merit. Accordingly, the verdict of the trial court is hereby affirmed.
Vukovich, J., Cox, P.J., concurs.
APPROVED
 ___________________________________ CHERYL L. WAITE, JUDGE