DOUGLAS, Appellee and Cross–Appellant,

v.

CINCINNATI BOARD OF EDUCATION, Appellant and Cross–Appellee.

[Cite as *Douglas v. Cincinnati Bd. of Edn.* (1992), 80 Ohio App.3d 173.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–910183, C–910197.

Decided May 20, 1992.

*Burlew, Caliman & Youngblood* and *John H. Burlew; Artz, Dewhirst & Farlow* and *Beverly J. Farlow,* for appellee and cross-appellant.

*Frost & Jacobs* and *David T. Croall;* and *John P. Concannon,* for appellant and cross-appellee.

*Per Curiam.*

The defendant-appellant, the Cincinnati Board of Education ("board"), appeals from the judgment entered in the Hamilton County Court of Common Pleas for the plaintiff-appellee, Richard Douglas. The court overturned the board's termination of Douglas's teaching contracts, holding that decision to be against the manifest weight of the evidence. Douglas cross-appeals from the same judgment insofar as it limited his recovery to reinstatement and lost wages and benefits.

Douglas formerly was a tenured assistant principal employed by the board. During the 1985 and 1986 school years, Douglas was an assistant principal at the Schwab Middle School. His duties included maintaining discipline among the student body and handling "at risk" students—those students with difficult discipline problems who were likely to drop out of school.

On March 22, 1989, pursuant to R.C. 3319.16 and 3319.161,[1] the board adopted a resolution declaring its intent to terminate Douglas's teaching contracts for immorality and for other good and just cause, for acts allegedly committed with and against female students at Schwab. Douglas and his attorney attended the meeting and were provided with an opportunity to respond to the allegations. The next day, the board provided written notification to Douglas of the allegations and of its intent to terminate.

Douglas requested a hearing on the proposed termination. The hearing, before Referee Richard J. Holzer, lasted a total of six non-consecutive days in May, June, and July 1989. At its conclusion, the referee submitted a Report and Recommendation to the board containing findings that Douglas committed a variety of inappropriate acts with female students.[2] On August 28,

---

1. R.C. 3319.16 reads, in pertinent part, as follows:
    " * * * Any teacher affected by an order of termination of contract may appeal to the court of common pleas of the county in which the school is located within thirty days after receipt of notice of the entry of such order. The appeal shall be an original action in the court and shall be commenced by the filing of a complaint against the board, in which complaint the facts shall be alleged upon which the teacher relies for a reversal or modification of such order of termination of contract.
    " * * *
    "The court shall examine the transcript and record of the hearing and shall hold such additional hearings as it considers advisable, at which it may consider other evidence in addition to the transcript and record.
    "Upon final hearing, the court shall grant or deny the relief prayed for in the complaint as may be proper in accordance with the evidence adduced in the hearing. Such an action is a special proceeding, and either the teacher or the board may appeal [therefrom]."

2. The referee's August 22, 1989, report concludes that "Douglas committed the following:
    "1. Acts of touching, holding and hugging in physically intimate manners;
    "2. Acts of intercourse and sexual fondling;

1989, the board voted to terminate Douglas's contracts of employment as a teacher and assistant principal.

Pursuant to R.C. 3319.16, Douglas timely filed an original action in the Hamilton County Court of Common Pleas in which he sought (1) to have the board ordered to reinstate his contracts without loss of pay, seniority or other benefits, and (2) to receive compensatory and punitive damages for the severe emotional distress suffered as a result of the board's actions.

In a teacher-termination proceeding, a court of common pleas may reverse a board of education's decision to terminate a teacher's contract when the board's decision is not supported by or is against the weight of the evidence. *Hale v. Bd. of Edn.* (1968), 13 Ohio St.2d 92, 42 O.O.2d 286, 234 N.E.2d 583, paragraph one of the syllabus. In reaching its decision, the court may hold further hearings and receive additional evidence to be certain that the board's actions were "legally regular." *Powell v. Young* (1947), 148 Ohio St. 342, 349, 35 O.O. 322, 325, 74 N.E.2d 261, 265; R.C. 3319.16.

Here, the common pleas court, in the exercise of its sound discretion, see *Houck v. Greenhills–Forest Park City School Dist. Bd. of Edn.* (June 24, 1981), Hamilton App. No. C–800358, unreported, 1981 WL 9862, permitted Douglas to supplement the record of the referee's hearing with additional evidence. Four witnesses testified for Douglas and were subject to cross-examination by the board: Alan Polter, a visiting teacher; Steven Ranker, the principal of Schwab during the relevant period; Cincinnati Police Officer Dan Bareswilt, the police resource officer for Schwab; and Douglas. The board, however, in its pretrial statement, declared that, except for conducting a cross-examination of Douglas, it "intended[ed] to rely on the extensive record from the referee's hearing." Consequently, no witnesses testified for the board.

The court took the matter under advisement and in an entry dated February 5, 1991, found the board's action in terminating Douglas to be against the manifest weight of the evidence. The court ordered the board to reinstate

---

"3. Acts of 'petting' of students in an unauthorized manner;
"4. Acts of smoking in unauthorized areas;
"5. Acts of using and/or permitting the use of alcohol and marijuana on school premises;
"6. Acts of cussing and the making of lewd remarks;
"7. Acts of permitting students to smoke in his presence;
"8. Acts of kissing students or being kissed by them;
"9. Acts of rubbing students on their backs and/or 'back sides';
"10. Acts of intimidation against students who would not cooperate with his behavior; and,
"11. An act of closeting and/or being closeted with a female student."

Douglas to a substantially equivalent position. The board now asks us to review the evidence before the court of common pleas, conclude that it improperly substituted its factual findings for those of the referee, and overturn the court's decision to reinstate Douglas.

■ As this court has noted previously, an R.C. 3319.16 proceeding in common pleas court is a hybrid, with characteristics both of an original action with evidence presented, and of a review of an administrative agency's decision based upon a submitted record. *Duncan v. Greenhills–Forest Park City School Dist. Bd. of Edn.* (Jan. 31, 1985), Hamilton App. No. C–840182, unreported, at 7–8, 1985 WL 9287. Despite this hybrid nature, because we do not have the opportunity to listen to the witnesses, to observe their demeanor and thus to judge their credibility, in a review of teacher-termination proceedings this court has a narrowly circumscribed role. *Graziano v. Amherst Exempted Village Bd. of Edn.* (1987), 32 Ohio St.3d 289, 294, 513 N.E.2d 282, 286. In *Graziano,* the Supreme Court of Ohio held that "[a]bsent an abuse of discretion on the part of the trial court, the court of appeals may not engage in what amounts to a substitution of judgment of the trial court * * *." *Id.*

■ Therefore, we may reverse the trial court's determination only if we conclude that it constituted not merely an error of judgment, "but * * * an attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable." *Ruwe v. Bd. of Springfield Twp. Trustees* (1987), 29 Ohio St.3d 59, 61, 29 OBR 441, 443, 505 N.E.2d 957, 959.

The court of common pleas was called upon to weigh the testimony of Douglas's accusers and of his supporters. The most serious and damaging accusations against Douglas came from the seven female students who testified before Referee Holzer. They alleged that Douglas fondled them, hugged them tightly, and, in his office, smoked marijuana and had sexual intercourse with one of them.

■ The court placed great reliance upon the testimony of the adult witnesses who testified in court, especially the testimony of Officer Bareswilt, the police resource officer assigned to Schwab. It was the testimony of several teachers at the referee's hearing as well as Officer Bareswilt's testimony in court that five of the seven students had bad reputations for veracity. Based upon this testimony, the court could have reasonably concluded that the accusations of at least five of the accusers were not to be believed.

A sixth female student claimed that Douglas had grabbed her breasts in his office. Steven Ranker, then principal of Schwab, testified that his investigation of the incident indicated that Douglas had been breaking up a fight, and that he found any physical contact to be "inadvertent and unintentional."

No witness, except Douglas, directly contradicted the testimony of the remaining student who alleged that Douglas had sexual relations with her in his Schwab office. Nonetheless in light of the testimony of Polter, Ranker and Officer Bareswilt as to the unsuitability of Douglas's office for acts that required privacy and seclusion—that one wall of the office was composed of large windows, with curtains that were rarely closed and that were very difficult to close, that it shared a common ventilation duct with an adjoining office, and that the office was located in a busy and often crowded section of the school's administrative offices—the court of common pleas may have reasonably concluded that the student's testimony was not worthy of belief or was inherently incredible.

The court heard extensive and detailed live testimony which served to undermine the credibility of Douglas's accusers. Each of the witnesses was cross-examined by counsel for the board. As well, the court reviewed the transcript of the referee's hearing. There was thus substantial evidence upon which the court could base its conclusion and necessarily its judgment of the credibility of the witnesses.

As Referee Holzer aptly noted: "Credibility * * * is the essential thread that runs throughout this case." The court below was in a far better position to evaluate the credibility of the witnesses than is this court sitting in review. Therefore, regardless of the conclusions this court might have reached had it been the trier of fact, we cannot conclude that the decision below was an abuse of discretion as it was not unreasonable, arbitrary or unconscionable. The board's assignment of error is overruled.

The two assignments of error raised in Douglas's cross-appeal allege that the trial court denied him an opportunity to litigate his emotional-damage claim against the board, and that the board denied him due process of law.

■ In his first assignment of error, Douglas alleges that the trial court erred in ruling that Douglas "is not eligible for any other types of damages in this matter," thereby disclaiming authority to hear Douglas's claim for emotional damage. We agree.

In count two of his complaint, Douglas claimed that as a direct and proximate result of his termination he suffered severe emotional distress. After setting aside the termination, the trial court denied Douglas the opportunity to present evidence regarding any claims for damage beyond those of back pay and reinstatement pursuant to his R.C. 3319.16 claim.

A wrongfully discharged teacher may seek redress for injuries to his employment status and benefits by proceeding under an R.C. 3319.16 original action. Loss of employment is, however, not the only injury which may result

from a termination decision. Here, Douglas may have suffered other damages to his reputation or to his emotional well-being.

Civ.R. 18(A) provides for liberal joinder of claims in original actions. To bar pursuit of Douglas's tort claim will preclude any redress for other injuries the board may have caused. *Rush v. Maple Hts.* (1958), 167 Ohio St. 221, 4 O.O.2d 279, 147 N.E.2d 599, syllabus; see Section 16, Article I, Ohio Constitution. Therefore, we hold, in sustaining Douglas's first assignment of error, that the trial court erred in prohibiting Douglas from going forward on his tort claim.

■ Douglas further claims that the trial court erred in failing to find a violation of Douglas's right to due process as a result of the board's alleged failure to advise him of the specific basis of the charges against him until after the referee's hearing had begun.

In *Cleveland Bd. of Edn. v. Loudermill* (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494, the United States Supreme Court held that while public employees are entitled to a hearing before a property interest in employment may be taken, "the essential requirements of due process" in such a hearing are simply "notice and an opportunity to respond." *Id.* at 546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. The purpose of these requirements is not to resolve the propriety of the taking, but rather to serve as " * * * an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. Additional pre-termination procedural requirements were not necessary, the court noted, because of the protections provided by "provisions in Ohio law for a full post-termination hearing." *Id.* at 546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506 (interpreting R.C. Chapter 124, with hearing requirements not unlike those of R.C. 3319.16).

Upon review of the record, we perceive no deprivation of Douglas's rights to due process. Douglas was given notice of the board's intent to terminate his teaching contracts. He was informed of and in fact attended, with counsel, the March 22, 1989 board meeting. At the hearing, Douglas was provided an opportunity to respond to the claims against him. It is clear from the record that the requirements of *Loudermill*—notice and an opportunity to respond before termination—were amply satisfied. Douglas's second assignment of error is overruled.

Having found no merit in the board's assignment of error, we affirm the trial court's judgment in case No. C–910193. In case No. C–910197, we reverse, for the reasons given in sustaining Douglas's first assignment of error, only that part of the judgment which improperly denied Douglas· the

opportunity to litigate his emotional-distress claim, and this cause is hereby remanded for further proceedings consistent with law on that one claim only.

*Judgment accordingly.*

GORMAN, P.J., SHANNON and DOAN, JJ., concur.