JAMES, Appellee,

v.

TRUMBULL COUNTY BOARD OF EDUCATION, Appellant.

[Cite as *James v. Trumbull Cty. Bd. of Edn.* (1995), 105 Ohio App.3d 392.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 94–T–5118.

Decided July 24, 1995.

*Dennis Haines* and *Robert S. Moore,* for appellee.

*Squire, Sanders & Dempsey, Timothy J. Sheeran* and *Michael W. Kelly,* for appellant.

FORD, Presiding Judge.

Appellee, Marianne Borsic James, was employed by appellant, Trumbull County Board of Education, as a teacher at appellant's Lordstown Elementary multihandicapped unit, working with seventeen students who had a myriad of handicaps, including Down's Syndrome, mental retardation, cerebral palsy, blindness, and deafness. After allegations were raised by, as characterized by appellant in its brief, "disgruntled aides,"[1] appellant conducted an investigation of appellee's therapy techniques. The co-workers claimed that appellee was abusing the children by employing questionable treatments, including using "aversives,"[2] tipping a student backwards while strapped to a chair, and placing a towel over the student's head.

A preliminary inquiry was undertaken by appellant, and a meeting with appellee was convened. Appellant was represented by its superintendent, its attorney, its director of education and appellee's supervisor. Appellee, after being advised of her right to legal counsel, freely admitted that she had implemented the controversial modalities. She confessed that she had used hot sauce, but only in an attempt to curb the student's "pica" behavior.[3] She noted though, that after two unsuccessful attempts to interdict the student's behavior, she refrained from using aversives and instituted another technique to redirect his attention.

As a result of the internal investigation, appellant ratified two resolutions terminating appellee's teaching contract. Appellee contested this action, and pursuant to R.C. 3319.16, a referee was appointed to hear the matter.

After receiving five days of testimony from twenty witnesses and admitting more than forty exhibits into evidence, the referee recommended that appellee's contract not be terminated. Despite his conclusions and the recommendation, appellant discontinued appellee's contract.

---

1. The referee noted that the complaints were lodged against appellee only after scheduling changes were announced and after the aides, who were unhappy with the changes, were advised by appellee's supervisor that another teacher had voiced concerns about them. As a result of this, and because of the aides' lack of special education training, the referee apparently accorded little weight to their testimony.

2. "Aversives" are one form of behavior management which is used in "differential reinforcement procedures" to reduce certain conduct. These tend to be unpleasant and include electric shock, seclusionary time-out, and aromatic ammonia, and could encompass the use of hot sauce and lemon juice.

3. Pica behavior is manifested by the eating of various objects, including feces, urinated diaper linings, plastic, nuts, bolts, carpeting, padding and clothing.

She appealed that action to the Trumbull County Court of Common Pleas. The court, without eliciting additional evidence, overturned appellant's decision, finding that it was not supported by the preponderance of the evidence. The court also ordered that appellee be awarded back pay and offered reinstatement.

From the trial court's ruling, appellant timely filed its appeal, raising the following sole assignment of error:

"The trial court abused its discretion in reversing the decision of the appellant board to terminate appellee's contract under Ohio Revised Code Section 3319.16."

R.C. 3319.16 provides that a tenured teacher can be terminated "for gross inefficiency or immorality; for willful and persistent violations of reasonable regulations of the board of education; or for other good and just cause." These constitute three separate, independent bases, each of which is sufficient to terminate a tenured teacher. *Hale v. Lancaster Bd. of Edn.* (1968), 13 Ohio St.2d 92, 42 O.O.2d 286, 234 N.E.2d 583.

The process to be employed in such a matter, after the decision to discharge is made, begins with a referee. He is required to hold an evidentiary hearing from which he presents his report to the school board. The board may then elect to accept or reject his recommendation.

"The decision to terminate a teacher's contract is comprised of two parts: (1) the factual basis for the allegations giving rise to the termination; and (2) the judgment as to whether the facts, as found, constitute gross inefficiency, immorality, or good cause as defined by statute. The distinction between these two is important in understanding the respective roles of the school board and of the statutory referee in the termination process. * * * The referee's primary duty is to ascertain facts. The board's primary duty is to interpret the significance of the facts." *Aldridge v. Huntington School Dist.* (1988), 38 Ohio St.3d 154, 157–158, 527 N.E.2d 291, 294.

The *Aldridge* court, therefore, held in the syllabus:

"In teacher contract termination disputes arising under R.C. 3319.16:

"1.   The referee's findings of fact must be accepted unless such findings are against the greater weight, or preponderance, of the evidence;

"2.   A school board has the discretion to accept or reject the recommendation of the referee unless such acceptance or rejection is contrary to law."

If the board decides to reject the recommendation of the referee, it must articulate its reasons for doing so as it is required to afford due deference to the referee's findings since he is "best able to observe the demeanor of the witnesses and weigh their credibility." *Graziano v. Amherst Exempted Village Bd. of Edn.* (1987), 32 Ohio St.3d 289, 293, 513 N.E.2d 282, 285.

From there, the decision of the school board may be appealed to the court of common pleas. The court then engages in a hybrid exercise, encompassing "characteristics both of an original action with evidence presented, and a review of an administrative agency's decision based upon a submitted record." *Douglas v. Cincinnati Bd. of Edn.* (1992), 80 Ohio App.3d 173, 177, 608 N.E.2d 1128, 1131. Based upon this review, "[t]he Common Pleas Court may reverse an order of termination of a teacher's contract, made by a Board of Education, where it finds that such order is not supported by or is against the weight of the evidence. (Section 3319.16, Revised Code, construed and applied.)" *Hale,* 13 Ohio St.2d 92, 42 O.O.2d 286, 234 N.E.2d 583, paragraph one of the syllabus.

The standard of review and the role of a court of appeals have been delineated by the Supreme Court of Ohio:

"If the judgment of the court of common pleas is then appealed to the court of appeals, review in the appellate court is strictly limited to a determination of whether the common pleas court abused its discretion. This scope of review is, of course, extremely narrow. The term 'abuse of discretion' has been defined as implying ' "not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." ' " (Citations omitted.) *Graziano,* 32 Ohio St.3d at 294, 513 N.E.2d at 286–287 (Douglas, J., concurring).

Thus, unless this court determines that the trial court abused its discretion, we are compelled to affirm its decision as "the court of appeals may not engage in what amounts to a substitution of judgment of the trial court in an R.C. 3319.16 proceeding." *Id.* at 294, 513 N.E.2d at 286.

" 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. * * * It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

"A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601.

█ In the matter *sub judice,* we do not perceive an "unreasonable, arbitrary or unconscionable attitude," nor one that is "not merely error of judgment, but [one of] perversity of will, passion, prejudice, partiality, or moral delinquency." To the contrary, the trial court's memorandum opinion provides a well-reasoned and articulated basis for reversing the decision of appellant and accepting the recommendation of the referee.

The trial court reviewed and rejected the specific grounds articulated by appellant for appellee's discharge. The court, discounting appellant's rationale, noted:

"[Appellant] failed to produce any written or verbal policy allegedly violated by [appellee]. [Appellant] failed to cite a single directive or instruction not followed by [appellee]. [Appellee's] supervisor admitted that [appellee] never failed to follow any directions or instructions given her. Moreover, after [appellant] raised its concerns with her, [appellee] was never given the opportunity to conform her behavior to [appellant's] expectations.

"The evidence indicated a diversity of opinion on the advisability or efficacy of the various techniques employed by [appellee] that formed the basis of the charges against her. Many, including this court, may disagree with those techniques. However, the evidence failed to establish any intentional disregard for the safety or well-being of her students. [Appellant] may not have always used the best judgment but where, as here, teachers work without clear guidelines in an educational area (teaching the multiply-handicapped) that is evolving and subject to differences of opinion, both statutory and case law require school boards to inform teachers of their expectations *before* terminating them." (Emphasis *sic.*)

The court then noted that appellant had not provided any evidence of "other good and just cause" which constituted "a fairly serious matter to permit termination." *Hale,* 13 Ohio St.2d at 98–99, 42 O.O.2d at 290, 234 N.E.2d at 587. The trial court concluded:

"[T]his court has weighed the evidence and determined that the preponderance of evidence does not support the conclusion that any of the statutory grounds for contract termination were present in this case. The evidence does not support [appellant's] allegation that [appellee] unreasonably subjected her students to potential harm or that she acted contrary to accepted teaching techniques."

Appellant, in reaching its decision, did not challenge the referee's factual findings as being against the greater weight or preponderance of the evidence, and it failed to identify any rule or regulation violated by appellee. Appellant also did not attempt to refute the referee's conclusion that appellee had not harmed or abused any of her students. Further, on appeal, it does not contend that appellee was grossly inefficient or immoral or had engaged in willful and persistent violations of reasonable board regulations so as to permit a termination on these grounds. Appellant now is claiming that appellee's admitted use of aversives, which appellant claimed created a potential harm to the students and

was contrary to accepted teaching practices, constituted "other good and just cause" to permit the discharge. We are unpersuaded.

In *Hale,* the court noted that the "legislative intention [was] that the 'other good and just cause' be a fairly serious matter." *Hale,* 13 Ohio St.2d at 99, 42 O.O.2d at 290, 234 N.E.2d at 587. However, we cannot say that the trial court abused its discretion by concluding that based upon the evidence before it, appellee's actions were not of the fabric which would constitute "a fairly serious matter" sufficient to sustain a discharge under the statute.

■ We are cognizant of the difficulty encountered with the type of exercise employed by appellant in its decision calculus. It was also hampered by the absence of any prior express policy balancing the types of techniques employed by appellee versus the potential harm inflicted upon multihandicapped students. Likewise, we are aware of the obstacles confronted by educators who are charged with supervising and "mainstreaming" a special needs population. On occasion, they may face behaviorally destructive or abusive tendencies without clearly expressed treatment guidelines and/or educational rules and regulation, and which require unpleasant approaches that may not be condoned under other circumstances. Nonetheless, in the instant action, appellee's admitted use of aversives did not provide a sufficient basis upon which to discharge her for "other good and just cause."

To the contrary, testimony was presented which indicated that the modalities employed by appellee, while not favored, are recognized treatment protocols. Indeed, appellant's own expert witness testified that he had used lemon juice on occasion. Furthermore, the referee concluded that appellee "[d]id not intentionally or maliciously try to harm any student she taught. * * * She may not have followed practices and procedures advocated by others in the field, but even these experts could not agree upon what was [the] 'standard of practice' in the field. I find no evidence that she punished any of her students or inflicted harm or pain on them."

Additionally, the referee concluded that the tipping was not used in an effort to chastise or castigate the student. This was based upon appellee's testimony. She claimed she employed the tipping as a safety precaution to prevent the pupil from injuring herself by throwing herself out of her chair. Appellee also noted that she placed the towel over the student's face in an effort to focus the student's attention by a technique known to her as "facial screening."[4] No evidence was

---

4. Appellant's experts testified that other practices had used facial screening but not similar to the specific method employed by appellee.

submitted that the student was at risk of choking or any other harm. Thus, we cannot conclude that the trial court's analysis that appellee's extremely limited use of challenged therapy methods did not rise to the level of "a fairly serious matter" was an abuse of discretion based on the evidence presented here.

■ Finally, appellant's attempt to supplement the record with materials not before the trial court will not be.condoned. Appellant argues, for the first time on appeal, that appellee violated federal and state law, professional norms and board policy. Appellant's attempt to bolster its initial position by bootstrapping additional reasons for the discharge, after the fact, is disingenuous. Although a matter of public record, similarly appellant's actions in attaching to its submission a copy of a related trial court opinion, which was not before either the referee, the board, or the trial court to augment its position, likewise lacks credence and adherence to fundamental concepts of appellate practice.

Notwithstanding this approach, appellant failed to present any evidence that appellee violated any state or federal law. Both the referee and the trial court concluded that appellee had not failed to follow appellant's policies or state or federal regulations.

Accordingly, we are unable to deduce that the trial court abused its discretion by reversing the decision of appellant. Appellant's assignment of error is without merit, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY and JOSEPH E. MAHONEY, JJ., concur.