[Cite as *Lanzo v. Campbell City School Dist. Bd. of Edn.*, 2010-Ohio-4779.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| RAYMOND LANZO, | ) | |
| | ) | CASE NO. 09 MA 154 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| CAMPBELL CITY SCHOOL DISTRICT | ) | |
| BOARD OF EDUCATION, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas
Court, Case No. 08 CV 3229.

JUDGMENT:     Affirmed.

APPEARANCES:
For Plaintiff-Appellant:     Attorney James E. Lanzo
4126 Youngstown-Poland Rd.
Youngstown, OH 44514

For Defendant-Appellee:     Attorney James E. Roberts
100 Federal Plaza East
Suite 600
Youngstown, OH 44503

JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: September 24, 2010

DeGenaro, J.

{¶1}  This timely appeal comes for consideration upon the record in the trial court and the parties' briefs.  Appellant, Raymond Lanzo appeals the August 4, 2009 decision of the Mahoning County Court of Common Pleas, which adopted the June 24, 2009 magistrate's decision upholding the decision of Appellee, Campbell City School District Board of Education, to terminate Lanzo's teaching contract.

{¶2}  Lanzo argues that his use of corrective actions, such as the incident involving a disruptive student that precipitated the Board's review, are appropriate and necessary in order to maintain a productive and safe learning environment.  Lanzo argues that the trial court abused its discretion in upholding the termination decision when Lanzo's actions did not constitute "good and just cause" pursuant to R.C. 3319.16.

{¶3}  Lanzo's physical intervention with a student merely for the purpose of redirecting the student's attention was a violation of school policy and disproportionate to the misbehavior involved.  More importantly, the Board's termination decision was based on Lanzo's cumulative misconduct over three years and not just on the "last straw" incident.  Lanzo's repeated misconduct constituted "good and just cause" for termination, thus the trial court's decision was not an abuse of discretion and we affirm.

### Facts and Procedural History

{¶4}  Lanzo is a middle school teacher who was employed by the Board for the 2003-2004 school year and subsequent years, pursuant to renewed one-year limited teaching contracts.  The Board placed Lanzo on administrative leave on November 30, 2007, after the parent of a student filed a complaint that Lanzo had used inappropriate physical discipline with her son three days earlier.  During the Board's investigation of the incident, it was also alleged that during the 2007-2008 school year, Lanzo had frequently pulled the ears of his male students and twisted their hair.

{¶5}  On January 31, 2008, the Board adopted a resolution suspending Lanzo's employment effective February 1, 2008, and scheduling a termination decision in the event that Lanzo did not request a hearing.  Lanzo requested a public hearing and the

appointment of an impartial referee, pursuant to R.C. 3319.16 and R.C. 3319.161. The parties agreed on a referee, who submitted his findings of fact and recommendations to the Board after three days of hearings in April, 2008.

{¶6} The referee found that on November 27, 2007, Lanzo's fifth grade class and another teacher's fifth grade class were viewing a video together, during which one of the other teacher's students was talking. The other teacher called out the student's name, but the student did not cease talking. Without the other teacher's permission, Lanzo grabbed the student by the arm or shirt, forcing him to stand, pulled the student to the front of the room, put his hand on the student's chin and pointed the student's face toward the video screen. The referee found that Lanzo's use of physical force violated the Board's policy against corporal punishment. The referee also found that Lanzo had twisted the hair and pulled the ears of some male students on several occasions during the school year leading up to November 27, 2007. The referee found that Lanzo's actions were in direct violation of the Board's policy against the inappropriate touching of students.

{¶7} The referee's findings of fact included the Board's prior discipline and corrective actions against Lanzo for four previous instances of misconduct. First, on September 6, 2005, Lanzo had been reprimanded for misconduct and disrespect at a school function, specifically, raising his voice to a student's grandparent. Second, on March 13, 2006, Lanzo had been reprimanded for misconduct, disrespect and insubordination, specifically, leaving his classroom unattended and interrupting a private meeting between the principal, a teacher and a parent, and leaving his classroom unattended a second time and twice interrupting another teacher's class. Third, on March 17, 2006, Lanzo was placed on administrative leave pending investigation, after the teacher's union president reported to the principal that Lanzo had indicated to the president that Lanzo would slash the principal's tires. This resulted in Lanzo signing a "last chance" agreement with the school on April 26, 2006, consenting to possible termination without the right to appeal, for any further misconduct through the end of the 2006-2007 school year. Although the termination provisions of the agreement were to

expire at the end of the 2006-2007 school year, the agreement specified that Lanzo's history of misconduct could still be considered in any future disciplinary actions. Lanzo returned from administrative leave on May 1, 2006.

{¶8} The fourth and final prior disciplinary incident occurred on June 7, 2006, when Lanzo left his class unattended, and an altercation between students occurred. Lanzo equivocated in his explanation to the principal regarding the sequence of events that led up to the altercation, and his explanation of his exact whereabouts was contradicted by security camera footage. The Superintendant allowed Lanzo a "second last chance," and negotiated twenty days of unpaid administrative leave, rather than immediate termination. Lanzo was not cited for any further misconduct until the present citations during the 2007-2008 school year.

{¶9} The referee concluded that Lanzo's most recent incidents of misconduct involved the physical mistreatment of students in violation of the Board's policies, which constituted good and just cause for terminating his teaching contract. The referee further found that the cumulative impact of Lanzo's ongoing misconduct necessitated his termination. On July 9, 2008, the Board unanimously adopted the referee's findings and recommendation, and terminated Lanzo's teaching contract.

{¶10} Lanzo filed a timely complaint with the Mahoning County Court of Common Pleas, appealing the decision of the Board. The magistrate considered the parties' briefs and oral arguments as well as the record of the Board's proceedings. On June 24, 2009, the magistrate concluded that Lanzo had been afforded all procedural rights under R.C. 3319.16, that the referee's factual findings were supported by the record, and that substantial and credible evidence supported the conclusion that the Board terminated Lanzo's teaching contract for good and just cause.

{¶11} Lanzo timely filed Objections to the Magistrate's Decision, presenting arguments regarding due process, findings of fact, as well as the argument that Lanzo presently asserts on appeal: that his conduct did not constitute "good and just cause" for termination pursuant to R.C. 3319.16. On August 4, 2009, the trial court upheld the Magistrate's Decision and denied Lanzo's prayer for relief.

**R.C. 3319.16 Contract Termination for "Good and Just Cause"**

**{¶12}** In his sole assignment of error on appeal, Lanzo asserts:

**{¶13}** "The Appellants [sic] actions were not an act of gross inefficiency, immorality, or good cause as defined by the statute and thus the action of the board was unlawful, and the trial Court's ruling upholding the actions of the board was an abuse of discretion."

**{¶14}** When a school board commences proceedings to terminate a teacher's contract, the teacher may request a hearing before the board or before an appointed referee. R.C. 3319.16; R.C. 3319.161. When the proceeding is conducted by a referee, a board must accept the referee's findings of fact, unless they are against the greater weight or preponderance of the evidence. *Aldridge v. Huntington Local School Dist. Bd. of Edn.* (1988), 38 Ohio St.3d 154, 527 N.E.2d 291, at paragraph one of the syllabus. The school board has the discretion to accept or reject the referee's recommendation, unless the school board's decision is contrary to law. Id. at paragraph two of the syllabus.

**{¶15}** A teacher whose contract has been terminated pursuant to the above proceeding may appeal the decision through an original action before the court of common pleas. R.C. 3319.16. The trial court has the discretion to hold additional hearings and consider additional evidence if necessary, but it may not reverse a board's termination order unless the order is against the manifest weight of the evidence. See *Oleske v. Hilliard City School Dist. Bd. of Edn.* (2001), 146 Ohio App.3d 57, 62, 764 N.E.2d 1110. Unless a school board "violated a statutory right or constitutional obligation, a trial court may not substitute its judgment for that of the board." *Kitchen v. Bd. of Edn. of the Fairfield City School Dist.,* 12th Dist. No. CA2006-09-234, 2007-Ohio-2846, at ¶17, quoting *Bertolini v. Whitehall City School Dist. Bd. of Edn.* (2000), 139 Ohio App.3d 595, 604, 744 N.E.2d 1245.

**{¶16}** An appellate court's review of a termination proceeding under R.C. 3319.16 is limited to a determination of whether the trial court's decision constituted an abuse of discretion. *Yarian v. Struthers City School Bd. of Edn.* (June 29, 1988), 7th Dist. No. 87 C.A. 95, at *2. Absent an abuse of discretion, "the court of appeals may not engage in

what amounts to a substitution of judgment of the trial court in an R.C. 3319.16 proceeding." *Graziano v. Bd. of Edn. of Amherst Exempted Village School Dist.* (1987), 32 Ohio St.3d 289, 294, 513 N.E.2d 282.

{¶17} Lanzo does not present an argument against any findings of fact, and only argues that his actions did not amount to gross inefficiency, immorality, or good cause as defined by R.C. 3319.16. Because the decisions below did not make any findings as to "gross inefficiency" or "immorality," the issue before this court is limited to whether the trial court abused its discretion in determining that Lanzo's actions, as described by the referee, the Board, and the magistrate, constituted "good and just cause" for termination as intended by R.C. 3319.16.

{¶18} What constitutes "good and just cause" can depend on the context and the unique facts of each case. The Ohio Supreme Court has explained that the concept of "good and just cause" must involve a "fairly serious matter" that is of the same magnitude as the other terms listed in R.C. 3319.16, such as "gross inefficiency or immorality" or "willful and persistent violations." *Hale v. Bd. of Edn., City of Lacaster* (1968), 13 Ohio St.2d 92, 98-99, 42 O.O.2d 286, 234 N.E.2d 583.

{¶19} In *Oleske*, a teacher was cited for multiple instances of telling jokes to students that contained sexual content and ethnic insensitivity, and multiple instances of intentionally mispronouncing a fellow teacher's name as "turd" in front of her students. *Oleske* at 59-60. The teacher had an exemplary teaching record for over twenty years, with no previous incidents of misconduct. Id. at 62. The school board accepted the referee's recommendation that the teacher's actions constituted "good and just cause" for termination. Id. at 60. The trial court affirmed the board's decision, and the Tenth District further affirmed, finding that it was not an abuse of discretion to find that the teacher's actions constituted a "fairly serious matter" and rose to the level of "good and just cause" for termination. Id. at 64-65.

{¶20} In *James v. Trumbull Cty. Bd. of Edn.* (1995), 105 Ohio App.3d 392, 663 N.E.2d 1361, an elementary school teacher in a multi-handicapped unit exercised aversive behavior management techniques, such as placing a towel over a student's head

to focus the student's attention or using hot sauce to dissuade a student from eating objects such as plastic, bolts or feces. *James* at 394. Upon rejecting the referee's recommendation, the school board terminated the teacher's contract. The trial court reversed the board's decision, and the Eleventh District affirmed, finding that the teacher had been given no warning that her techniques should be changed, the teacher's techniques were recognized, albeit disfavored, treatment protocols, and the school did not produce evidence of any policy that prohibited the teacher's conduct. Id. at 398-399.

{¶21} Conversely, in *Beranek v. Martins Ferry City School Dist. Bd. of Edn.* (Jan. 20, 1989), 7th Dist. No. 88-B-11, the trial court affirmed the school board's decision to terminate a male teacher even though the board failed to produce evidence of a policy that defined what constituted "inappropriate touching." Id. at *4. This Court found common sense dictated that the teacher intentionally touching female students' buttocks or chests was inappropriate, and that such actions justified the school board's decision to terminate the teacher's contract pursuant to R.C. 3319.16, even in the absence of a policy defining "inappropriate touching". Id. at *6. Finally, in *Yarian*, this Court held that a teacher's repeated acts of insubordination, such as leaving school premises, failing to attend meetings, excessive absenteeism, and telling falsehoods to attempt to excuse an absence amounts to "other good and just cause" for termination, even if the conduct does not violate an explicit rule or regulation of the school. *Yarian*, supra, at *4.

{¶22} Here, the facts that supported the conclusions of the referee, the Board and the trial court, were various instances of misconduct by Lanzo, which required repeated disciplinary and corrective actions by the Board. There were four prior incidents involving Lanzo which resulted in discipline prior to the incident which triggered these proceedings.

{¶23} On September 6, 2005, Lanzo was reprimanded for misconduct and disrespect at a school function, specifically, raising his voice to a student's grandparent. On March 13, 2006, Lanzo was reprimanded for misconduct, disrespect and insubordination, specifically, leaving his classroom unattended and interrupting a private meeting between the principal, a teacher and a parent, and leaving his classroom unattended a second time and twice interrupting another teacher's class. From March 17

to May 1, 2006 Lanzo was placed on administrative leave, after voicing a threat to his union president that Lanzo would slash the principal's tires. From August 30 through September 28, 2006, Lanzo was placed on unpaid administrative leave, after Lanzo had equivocated in his explanation to the principal regarding a June 7, 2006 incident where he had left his classroom unattended and an altercation between students had ensued.

**{¶24}** The final incident occurred on November 27, 2007. Lanzo used unreasonable physical force to discipline another teacher's fifth-grade student for talking during class, specifically by taking the student by the arm, forcing him to stand, pulling him to the front of the room, and physically moving the student's head toward the video being viewed in the classroom. During this investigation it came to light that also during the 2007-2008 school year, Lanzo inappropriately touched his fifth-grade students on several occasions, specifically by twisting their hair or pulling their ears.

**{¶25}** Lanzo argues that his actions during the final incident did not directly contravene school policy because they constituted a necessary corrective measure to quell a disruptive student. Lanzo contends that the Board's termination of his contract in response to this incident sends the message that teachers are not permitted to take the necessary steps to maintain order in the classroom, and that such a message will lead to unproductive and unsafe learning environments.

**{¶26}** The referee found that Lanzo's conduct during the 2007-2008 school year did in fact contravene the school's policy against corporal punishment and inappropriate touching. Even if Lanzo's actions on November 27, 2007 did not meet the traditional definition of corporal punishment, they nonetheless contravened the school's policy that any discipline imposed must be proportionate to the student's misconduct. Moreover, the Board's decision to terminate Lanzo's contract was not based solely on his misconduct during the 2007-2008 school year, but also in consideration of his cumulative history of repeated misconduct while employed by the Board.

**{¶27}** Although Lanzo attempts to limit the focus of this appeal to his final acts of misconduct, the Board rightfully considered Lanzo's performance throughout the duration of his employment. Unlike the teacher in *Oleske*, who was terminated even in light of her

spotless twenty year record, Lanzo was repeatedly reprimanded for his misconduct throughout his five years of teaching. In accordance with *Beranek* and *Yarian,* even if some of Lanzo's behavior did not violate an explicit rule or regulation of the school, it nonetheless constituted good and just cause for termination. Moreover, his physical contact with students did violate school policies against corporal punishment and inappropriate touching, and thus also good and just cause for termination, unlike the teacher in *James*.

**{¶28}** Consideration of Lanzo's history of repeated insubordination and classroom-management deficiencies, along with his final acts of misconduct, reasonably lead to the conclusion that there was good and just cause for terminating Lanzo's teaching contract. The trial court therefore did not abuse its discretion in upholding the Board's decision. Accordingly, Lanzo's sole assignment of error is meritless, and the judgment of the trial court is affirmed.

Vukovich, P.J., concurs.

Waite, J., concurs.