[Cite as *Fiedeldey v. Finneytown Local School Dist. Bd. of Edn.*, 2020-Ohio-3960.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DARLA FIEDELDEY, | : | APPEAL NO. C-190366 |
| | | TRIAL NO. A-1803020 |
| Plaintiff-Appellee, | : | |
| vs. | | *O P I N I O N.* |
| | : | |
| FINNEYTOWN LOCAL SCHOOL | | |
| DISTRICT BOARD OF EDUCATION, | : | |
| Defendant-Appellant. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: August 5, 2020

*Freking Myers & Reul, LLC*, and *Erin Heidrich,* for Plaintiff-Appellee,

*Ennis Britton Co. LPA* and *C. Bronston McCord III*, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1} Finneytown Local School District Board of Education ("the Board") appeals the judgment of the Hamilton County Court of Common Pleas reversing the decision of the Board to terminate the employment of Darla Fiedeldey and awarding damages. Because under our limited scope of review, we cannot say that the trial court abused its discretion in reversing the Board's decision, and because the court did not err in its award of back pay, we affirm the trial court's judgment.

*Background*

{¶1} Fiedeldey was employed as a kindergarten teacher at Brent Elementary School in the Finneytown Local School District for 17 years. She consistently received the highest ratings for her job performance and, before the incident that led to her termination, had no previous disciplinary issues.

{¶2} In November 2017, the Board notified Fiedeldey that it had initiated proceedings under R.C. 3319.16 to terminate her teacher contract for "good and just cause" because Fiedeldey had engaged in an inappropriate physical interaction with a kindergarten student when she dragged the student down the hallway by the student's arm while the student was on the floor. Upon receipt of the Board's notice, Fiedeldey exercised her right under R.C. 3319.16 to demand a hearing before a referee regarding her termination.

{¶3} At the hearing before a referee, the Board presented the following evidence. Nancy Rouse, the school counselor at Brent Elementary, testified that on Monday, October 2, 2017, she saw a kindergarten student pass by her office so she walked him to Fiedeldey's classroom, which was the student's assigned classroom. As they walked, the student was punching his bookbag and ripping things off of the walls. Gina Brooks, Fiedeldey's kindergarten aide, told Rouse that the student would not come into the classroom, so Rouse suggested that they utilize a "buddy teacher,"

who would take the student for a "time out." Fiedeldey agreed, so Rouse began to walk the student down the hall to a buddy teacher's classroom.

{¶4}   Before Rouse was able to get the student to a buddy teacher's classroom, the student sat on the floor near the boys' restroom and refused to move. Rouse stayed with the student for several minutes until Fiedeldey approached. Rouse reminded Fiedeldey that the student's mother did not want Rouse to work with the student. So Rouse told Fiedeldey that, because there was no administrator in the school building at the time, she was going to contact Whitaker Elementary School, another school within the district, for administrative support. Rouse said that Fiedeldey used her cell phone to call the student's mother to explain the student's behaviors that morning and to tell her that he was refusing to go to a buddy teacher or to return to Fiedeldey's classroom.

{¶5}   While Fiedeldey was on the phone, Rouse returned to her office, leaving the child with Fiedeldey. Rouse felt it necessary to contact Whitaker Elementary because the student was not complying and his behaviors were escalating. While Rouse was in her office, she heard the student say, "Ouch, get off of me," and heard Fiedeldey say, "If you do not get up, I'm going to drag you." By the time Rouse left her office to see what was happening, Fiedeldey and the student were no longer in front of the restroom and were turning a corner into another hallway.

{¶6}   Rouse passed teacher Chuck Grosser and custodian Julie Ake who both indicated that they saw the student being dragged. Ake told Rouse that the student was out of control.

{¶7}   According to Rouse, Lisa Hill, a behavior intervention specialist who had prior dealings with the student, later arrived from Whitaker Elementary and went to Fiedeldey's classroom. In the meantime, Rouse texted her principal, Lana Gerber, who was at an out-of-town funeral. When Gerber returned the following

day, Rouse reported the incident to her. In addition, Rouse reported the incident to the school district's bullying hotline.

{¶8} Ake testified that she was in a janitorial closet when she turned to see the student lying on the floor and Fiedeldey holding him by the arm. Ake told the student to get up off the floor, but the student refused, and Fiedeldey continued to drag him. According to Ake, Fiedeldey is "awesome," and "really cares for her students," and "the kids loved her." When asked if she had ever seen Fiedeldey mistreat a student, Ake replied, "Other than what happened, no." Ake said that she had previous interactions with the student and described him as "a hot mess." She said that "what the student was doing, to me, was more inappropriate than what Mrs. Fiedeldey was doing."

{¶9} Gina Brooks, a kindergarten aide, testified that she was in Fiedeldey's classroom when she turned around to see the student lying on the floor and Fiedeldey holding his arm. Brooks heard the student say, "You're hurting me," and heard Fiedeldey say, "No, I'm not." Brooks had seen the student act like that before, and had heard him say on prior occasions, "You're hurting me," when he was not being hurt, so Brooks did not believe that Fiedeldey was hurting him at the time.

{¶10} After learning of the incident from Gerber on Wednesday, October 4, Terri Noe, the superintendent of Finneytown Local School District, reviewed surveillance video and questioned witnesses. Chuck Grosser told her that he heard the student say something like, "Get off my arm," or "You're hurting me," but he did not see the dragging incident. According to Noe, the distance from the boys' restroom to Fiedeldey's classroom is 126 feet.

{¶11} Noe suspected that Fiedeldey's conduct constituted child abuse so, in accordance with her duties under R.C. 2151.421 to report suspected child abuse, she reported the incident to the school's resource officer, who is a Springfield Township

police officer, on Thursday, October 5. Then she returned to Brent Elementary and had Rouse report the incident to 241-KIDS.

{¶12} The Board introduced two videos into evidence. Neither video recorded sound nor captured the beginning of the incident near the boys' restroom. One video showed Fiedeldey dragging the student in a hallway before she stopped, apparently while speaking into her cell phone. The video camera was motion sensitive, so it stopped recording at that point and did not begin recording until almost a minute later and showed Fiedeldey and the student near the end of the hallway with Ake. The second video showed Fiedeldey dragging the child a short distance from a hallway and around a corner into her classroom.

{¶13} After the Board rested, Fiedeldey testified that she asked the student to come to her classroom multiple times, but the student did not reply. She said that she wanted the student "to be compliant, to come to my room, so that he was supervised." She was particularly concerned about his noncompliance that day because the week before, he had not only left her classroom, but he had run out of the school building. So Fiedeldey began to walk slowly and drag the student to her classroom. Fiedeldey said that she had no intent to injure or punish the student and that she "just wanted him safe and compliant."

{¶14} Fiedeldey said that she called the student's mother because she felt like she "didn't have anybody else to ask for help." She said that she spoke to the student's mother on speakerphone so that the student could hear the conversation. Fiedeldey testified that when she stopped in the hallway as she spoke to the student's mother (which is presumably the point where the video stopped recording), the student got up and walked the remainder of the hallway before dropping down to the floor again near her classroom.

{¶15} Fiedeldey denied that the student every said "Get off me" or "You're hurting me." She said that she "probably" had not told the student's mother that she

was going to drag the student to her classroom. When asked whether the student was in any "immediate danger of being hurt" as he sat on the floor, Fiedeldey replied, "No." When asked why, if he was not in immediate danger, she needed to drag him to the classroom, Fiedeldey responded, "I don't feel like him sitting in the hallway is a good use of his time." She acknowledged that she was regretful for dragging the student, and that her conduct in doing so was neither "okay" nor "the best practices."

{¶16} Fiedeldey introduced into evidence copies of the job-performance evaluations she received while employed by the school district. In addition, she introduced into evidence a copy of the report by the Springfield Township police officer. The officer's report indicated that he reviewed the video provided by Noe. The officer noted, "The student is being pulled across the floor * * * but does not appear to be in pain or suffering any injuries." The officer stated, "The teacher involved does not appear to be aggressively pulling or jerking the child." He wrote: "There was no complaint of injury from the student, nor did the student advise their parent of what had occurred. To my knowledge, the parents were not aware of the incident until a few days later when the school was informed of what had taken place." The officer stated that, after reviewing the video, he was unable to determine "if there was enough evidence to support a criminal charge," so he sought guidance from the county prosecutor's office, which later advised that "their office would not be pursuing criminal charges with the information we had."

{¶17} The referee issued a decision finding that Fiedeldey had dragged the student the full 126-foot distance from the boys' restroom to her classroom. The referee noted that Fiedeldey's job-performance evaluations had consistently given her the highest, "distinguished," ratings and contained many laudatory remarks about her performance. However, the referee found:

> This undoubtedly and deserved high praise in her seventeen years of service cannot excuse her conduct in dragging a child by his arm [126]

6

feet down a hallway where two others of the staff overheard "you are hurting me." Indeed, the last video footage shows the Teacher turning a corner out-of-view while the student is still on film on the floor with one arm twisted ahead of him as he is being pulled toward the entrance to the room.

{¶18} The referee found that good and just cause existed for termination and recommended that Fiedeldey be terminated. In May 2018, the Board accepted the hearing officer's recommendation and terminated Fiedeldey's employment.

{¶19} Fiedeldey appealed the Board's decision to the Hamilton County Court of Common Pleas pursuant to R.C. 3319.16. The court determined that the weight of the evidence did not support the termination of Fiedeldey's employment. The court entered a judgment overruling the Board's decision, reinstating Fiedeldey, and awarding damages. This appeal followed.

### R.C. 3319.16

{¶20} In its first assignment of error, the Board argues that the trial court erred by overturning the Board's decision to terminate Fiedeldey's employment. The Board contends that the court abused its discretion in determining that the Board's decision was not supported by the weight of the evidence.

{¶21} Under R.C. 3319.16, an appeal by a teacher to the common pleas court "shall be an original action in the court" where "[t]he court shall examine the transcript and record of the hearing and shall hold such additional hearings as it considers advisable, at which it may consider other evidence in addition to the transcript and record." This court has described an R.C. 3319.16 proceeding in common pleas court as "a hybrid, with characteristics both of an original action with evidence presented, and of a review of an administrative agency's decision based

7

upon a submitted record." *Douglas v. Cincinnati Bd. of Edn.*, 80 Ohio App.3d 173, 177, 608 N.E.2d 1128 (1st Dist.1992).

{¶22} Although the common pleas court does not conduct a trial de novo on an appeal pursuant to R.C. 3319.16, "the clear statutory language does however empower the court to weigh the evidence, hold additional hearings and render factual determinations." *Graziano v. Bd. of Edn. of Amherst Exempted Village School Dist.*, 32 Ohio St.3d 289, 293, 513 N.E.2d 282 (1987). The common pleas court may reverse a board of education's order of termination of a teacher's contract when the board's decision is not supported by or is against the weight of the evidence. *Hale v. Bd. of Edn.*, 13 Ohio St.2d 92, 234 N.E.2d 583 (1968), paragraph one of the syllabus; *Stalder v. St. Bernard-Elmwood Place City School Dist.*, 1st Dist. Hamilton No. C-090632, 2010-Ohio-2363, ¶ 14.

{¶23} While the common pleas court has the power to weigh the evidence and determine the credibility of witnesses in an R.C. 3319.16 proceeding, an appellate court reviewing that determination has a more limited scope of review. *Graziano* at 294. The appellate court is "strictly limited to a determination of whether the common pleas court abused its discretion." *Stalder* at ¶ 15, quoting *James v. Trumbull Cty. Bd. of Edn.*, 105 Ohio App.3d 392, 663 N.E.2d 1361 (11th Dist.1995). "Absent an abuse of discretion on the part of the trial court, the court of appeals may not engage in what amounts to a substitution of judgment of the trial court in an R.C. 3319.16 proceeding." *Graziano* at 294. An abuse of discretion "connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." *Pembaur v. Leis*, 1 Ohio St.3d 89, 91, 437 N.E.2d 1199 (1982).

{¶24} Here, the trial court conducted its own review of the evidence, as permitted by R.C. 3319.16, and determined that the Board's decision was not supported by the weight of the evidence. The court determined that Fiedeldey's

8

conduct in dragging the student did not constitute "good and just cause" to terminate her employment. We must determine whether the trial court abused its discretion in overturning the decision of the Board to terminate Fiedeldey.

{¶25} R.C. 3319.16 prevents a teacher's contract from being terminated for other than "good and just cause." Although "good and just cause" is not statutorily defined, the Supreme Court of Ohio has construed it to mean "a fairly serious matter." *Hale*, 13 Ohio St.2d at 98-99, 234 N.E.2d 583. In *Hale*, the Supreme Court affirmed the reversal of a teacher's termination for hitting a parked car while intoxicated and leaving the scene, holding that "where only a single crime is involved, the crime would either have to be a more serious one or involve a more serious fact situation than that here involved." *Id.* at 99. Generally, what constitutes good and just cause "depends on the context and unique facts of each case." *Hiss v. Perkins Local School Dist. Bd. of Edn.*, 2019-Ohio-3703, 144 N.E.3d 1093, ¶ 149 (6th Dist.).

{¶26} Appellate courts have found good and just cause to include behavior that is hostile to the school community. *Winland v. Strasburg-Franklin Local School Dist. Bd. of Edn.*, 2013-Ohio-4670, 999 N.E.2d 1190, ¶ 32 (5th Dist.), citing *Florian v. Highland Local School Dist. Bd. of Edn.*, 24 Ohio App.3d 41, 42, 493 N.E.2d 249 (9th Dist.1983). Court have also found good and just cause to include behavior that could have caused serious harm to a student. *See Hiss* (teacher gave or allowed students access to prescription analgesic patches over a period of three years); *Bertolini v. Whitehall City School Dist. Bd. of Edn.*, 139 Ohio App.3d 595, 608, 744 N.E.2d 1245 (10th Dist.2000), citing *Ricchetti v. Cleveland City School Dist. Bd. of Edn.*, 8th Dist. Cuyahoga No. 64833, 1994 WL 66227 (Mar. 3, 1994) (teacher engaged in a high-speed chase to avoid apprehension by police while detaining a teenager in his car); *Brownfield v. Warren Local School Dist. Bd. of Edn.*, 4th Dist. Washington No. 89CA26, 1990 WL 127054 (Aug. 28, 1990) (teacher

risked the physical safety of a student by requiring the student to touch the end of a paper clip into one of the holes of a 110-volt electrical outlet).

{¶27} However, good and just cause may not exist where the teacher's physical conduct toward a student results in no injury to the student and the teacher intended no harm to the student. *See James*, 105 Ohio App.3d 392, 663 N.E.2d 1361 (special education teacher's use of aversive behavior management techniques, including tipping a student backwards while strapped to a chair and placing a towel over the student's head, did not rise to the level of a fairly serious matter where the methods were recognized treatment protocol and she did not intentionally or maliciously try to harm any student and did not inflict harm or pain on any student). And this court, in *Stalder*, 1st Dist. Hamilton No. C-090632, 2010-Ohio-2363, held that a teacher's conduct in throwing a basketball at a basketball in a student's hands did not amount to a "fairly serious matter" where the student was not injured, there was no intent to hit the student with the basketball, and the teacher did not violate criminal law or regulations of the board of education in doing so. *Stalder* at ¶ 18. We held that the trial court did not abuse its discretion by reversing the teacher's termination given the teacher's exemplary teaching record and the fact that the teacher did not intentionally throw the ball directly at the student. *Id.* at ¶ 16.

{¶28} In this case, the trial court determined that the Board's finding of good and just cause was not supported by the weight of the evidence. The court found that the facts "pose[d] an even less serious matter" than the facts in *Stalder* because Fiedeldey did not place the student in harm's way. The court determined that Fiedeldey had moved the student "in a manner that was intended to cause no harm, but [to] maintain control of the situation." The court found that Fiedeldey was a well-respected teacher who had no prior disciplinary record prior to the dragging incident. The court noted that Fiedeldey was "held in a high regard" as being one of the few teachers that could handle the student, and that the school had

10

acknowledged its confidence in her judgment by placing the student in her classroom for two consecutive years.

{¶29} The Board argues that the trial court failed to give deference to the findings of fact made by the referee. Specifically, the Board points to the trial court's statement in its decision that "[a] teacher needs to have the ability to control the situation with an unruly student, when the student's safety is compromised and there are no reasonable alternatives at the moment to address the situation." The Board contends that this finding by the trial court "flies in the face" of the referee's findings.

{¶30} The Board directs us to *Aldridge v. Huntington Local School Dist. Bd. of Edn.*, 38 Ohio St.3d 154, 527 N.E.2d 291 (1988), and *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 407 N.E.2d 1265 (1980). In *Aldridge*, the Supreme Court held that in an R.C. 3319.16 proceeding, a school board must accept a referee's findings of fact unless they are against the greater weight of the evidence. *Aldridge* at 158. In *Conrad*, which involved an administrative appeal under R.C. 119.12, the Supreme Court of Ohio held that a common pleas court must give "due deference" to the administrative resolution of evidentiary conflicts, and further held, however, that "the findings of the agency are by no means conclusive." *Conrad* at 111. We note that in *Graziano*, 32 Ohio St.3d at 293, 513 N.E.2d 282, the Supreme Court cited *Conrad* for the proposition that in an R.C. 3319.16 proceeding, the board of education must give due deference to the findings and recommendations of the referee, especially where there are evidentiary conflicts.

{¶31} In this case, the only real conflicts in the evidence were whether Fiedeldey dragged the student 126 feet or, as she claimed, the student walked a portion of that distance, and whether the student stated that she was hurting him or, as Fiedeldey claimed, he had not. In resolving the conflicts in the evidence, the referee determined that Fiedeldey had dragged the student the full 126-foot distance and that the student had said she was hurting him. Following its review of the

evidence, the trial court made no findings to the contrary. Instead, it determined that those facts, which were accepted by the Board, did not rise to the level of good and just cause to terminate Fiedeldey.

{¶32} The Board argues that the trial court's abuse of discretion is exemplified by comments the court made about what it observed on the video before it considered all of the evidence, including: "Frankly, it doesn't look all that serious to me"; "[It looks like] he was kind of like enjoying it"; and "This seems silly to me * * * I can't believe they fired her over this. * * * That's ridiculous." The Board notes that the court also commented on the future of the student, the status of our society, and a lack of respect exhibited toward teachers. We find the trial court's remarks were intemperate and ill-advised, but on this record, we cannot say that the court abused its discretion in reversing the Board's decision to terminate Fiedeldey. Therefore, we overrule the first assignment of error.

### Mitigation of Damages

{¶33} In its entry awarding Fiedeldey back pay in the amount of $90,619, the trial court wrote, "The Court finds that Plaintiff did not seek to mitigate her damages but further finds that she did not have an obligation to do so given the circumstances surrounding the termination[.]" In its second assignment of error, the Board argues that the trial court erred by holding that Fiedeldey did not have an obligation to mitigate her damages.

{¶34} A public employee who is wrongfully excluded from her position and sues to recover compensation for the period of exclusion is subject to having her claim reduced by the amount she earned, or in the exercise of due diligence, could have earned in appropriate employment during the period of exclusion. *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 105 Ohio St.3d 476, 2005-Ohio-2974, 829 N.E.2d 298, ¶ 46, citing *State ex rel. Martin v. Columbus, Dept. of Health*,

58 Ohio St.2d 261, 389 N.E.2d 1123 (1979), paragraph two of the syllabus. This principle of mitigation of damages is "an affirmative defense and the burden of proof on that issue resides upon the employer responsible for the wrongful discharge." *Id.*, quoting *Martin* at paragraph three of the syllabus.

{**¶35**} Because mitigation of damages is an affirmative defense, the employer responsible for the wrongful discharge bears the burden of establishing with reasonable certainty the amount that the employee could have earned during the period of exclusion. *Copley v. Medpace, Inc.*, S.D.Ohio No. 1:12-cv-426, 2014 WL 7334232 (Dec. 19, 2014); *State ex rel. Martin v. Bexley City School Dist. Bd. of Edn.*, 39 Ohio St.3d 36, 38, 528 N.E.2d 1250 (1988). To establish that an employee failed to mitigate her damages, the employer must show that (1) substantially equivalent positions were available and that (2) the employee failed to use reasonable care and diligence in seeking those positions. *Stallworth v. Wal-Mart Stores E., L.P.*, 2016-Ohio-2620, 50 N.E.3d 27, ¶ 40 (1st Dist.); *Hollingsworth v. Time Warner Cable*, 168 Ohio App.3d 658, 2006-Ohio-4903, 861 N.E.2d 580, ¶ 69 (1st Dist.).

{**¶36**} The Board's attorney did not dispute that, if awarded, the correct amount of Fiedeldey's back pay would be $90,619. But he told the court that it was his understanding that Fiedeldey had not applied for any positions during the pendency of the action and, therefore, had not attempted to mitigate her damages. Fiedeldey's attorney said that the state was investigating Fiedeldey's license due to the report from the Board and asserted that no one would hire her until this proceeding and the license proceeding were over.

{**¶37**} Because the Board put on no evidence to sustain its burden of proving that substantially-equivalent positions had been available or the amount that Fiedeldey could have earned in appropriate employment in mitigation of damages, the trial court did not err by awarding her the full amount of her back pay. Although the court's statement that Fiedeldey was not obligated to mitigate her damages was

not a correct statement of law, the court properly declined to diminish her back pay award because the Board failed to meet its burden. *See Greenacres Found. v. Zoning Bd. of Bldg. Appeals*, 1st Dist. Hamilton No. C-120131, 2012-Ohio-4784, ¶ 15 (it is well settled that a trial court may be right for the wrong reasons without resulting in reversible error). Therefore, we overrule the second assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON** and **CROUSE, JJ.,** concur.

Please note:

The court has recorded its own entry this date.