[Cite as *Winland v. Strasburg-Franklin Local School Dist. Bd. of Edn.*, 2013-Ohio-4670.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| H. MICHAEL WINLAND | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 12 AP 10 0058 |
| | : | |
| STRASBURG-FRANKLIN LOCAL | : | |
| SCHOOL DISTRICT BOARD OF | : | |
| EDUCATION, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellants | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Tuscarawas County
                             Court of Common Pleas, Case No. 2012
                             AA 03 0242



JUDGMENT:                    AFFIRMED



DATE OF JUDGMENT ENTRY:       September 25, 2013



APPEARANCES:

For Plaintiff-Appellee:                For Defendants-Appellants:

RALPH F. DUBLIKAR                      WARRANT ROSMAN
400 South Main Street                  JOHN S. KLUZNIK
North Canton, OH 44720                 The Tower at Erieview
                                       1301 E. 9th St., Suite 1900
                                       Cleveland, OH 44114

*Delaney, J.*

{¶1} Defendant-Appellant Strasburg-Franklin Local School District Board of Education appeals the September 12, 2012 judgment entry of the Tuscarawas County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Plaintiff-Appellee H. Michael Winland has taught at Strasburg Elementary School, part of the Strasburg-Franklin Local School District, for twelve years. Most recently, Winland taught language arts and social students to fifth grade students. Winland holds an elementary education and a secondary education license. Winland also coaches track for the school district.

{¶3} On August 26, 2011, the Superintendent of Defendant-Appellant Strasburg-Franklin Local School District Board of Education ("BOE") advised Winland by letter he was recommending the BOE consider suspension and/or termination proceedings with respect to Winland's teaching contract. The letter stated, "[t]his action is being considered due to your failure to follow prescribed procedures and policies with respect to the possession and use of school district technology." The BOE issued a resolution on September 1, 2011 authorizing the suspension of Winland without pay pending termination proceedings.

{¶4} Upon receipt of the BOE's specification letter, Winland timely demanded a hearing before a referee in accordance with R.C. 3319.16 and 3319.161. An evidentiary hearing was held before the referee on December 1 and 2, 2011. The referee issued his report and recommendation on January 27, 2012. The referee made the following findings of fact.

{¶5}   Winland's school principal testified at the hearing Winland did a good job and was an effective elementary school teacher.  During the past three school years, the principal favorably reviewed Winland's teaching ability.   The principal awarded Winland the highest mark in all but one of 33 categories during an evaluation on March 15, 2010.  In the same evaluation, the principal awarded Winland top marks in 12 of 13 categories related to teaching effectiveness and classroom management; top mark in eight out of eight categories for personal qualities; and top marks in nine out of nine professional categories.

{¶6}   Winland had one prior disciplinary action on his record.  In February 2006, Winland received a five-day suspension for abuse of sick leave.

{¶7}   In the beginning of the school year, each teacher receives a copy of the school district handbook.  The handbook contains an Acceptable Use Policy for staff members for the use of the school computers, computer network, and electronic messaging system.  The Acceptable Use Policy states the transmission of any language or images, which are of a graphic sexual nature, are an unacceptable use of the computers provided by the school district.  The school district also has a Computer/On-Line Services Acceptable User and Internet Safety Policy.  It states: "Users shall not view, download or transmit material that is threatening, obscene, disruptive or sexually explicit * * *."  "If any users violate any of these provisions, their accounts may be terminated by either the District or OME-RESA and future access may be denied."

{¶8}   The school district provided Winland with a laptop computer for his use in his classroom during the school year.  On June 6, 2011, Winland requested permission to use his laptop during the summer.  The Summer Equipment Sign-Out Sheet signed

by Winland stated he agreed to return the laptop no later than June 30, 2011. The Sign-Out Sheet stated, "I further acknowledge that these devices are to be used exclusively for school-related purposes and that any misuse(s) of said devices, any misconduct, or any violation of the district acceptable use policy will be documented and reported to the building principal(s) for further action."

{¶9}   Winland worked at numerous football clinics in Midwestern and Southern states during June and July 2011. From June 28 to July 2, Winland worked at a football clinic in Indiana. Winland departed Indiana on July 2 and met his family in Kentucky. From Kentucky, he and his family went for vacation in Alabama from July 2 to July 10. Winland returned to Ohio on July 11. On July 13, Winland left for a football clinic in Georgia from July 14 to July 17. Winland returned to Ohio on July 17. On July 23, Winland left for a football clinic in Michigan from July 24 to July 27.

{¶10} Winland returned his laptop computer to Strasburg Elementary School on July 28, 2011. He left the laptop on his desk in his classroom. The school IT department tried to notify Winland he needed to return the school laptop by June 30, 2011.

{¶11} The school principal found the laptop computer on Winland's desk. The principal gave the computer to the school IT department. The IT department examined Winland's laptop computer closely due to Winland's previous download of a virus on an assigned school laptop computer. The IT department discovered in the laptop computer's temporary internet files 84 thumbnail images of graphic, sexual images. The temporary internet files were cached within 23 minutes, between 7:16 pm and 7:39 pm on July 26, 2011.

{¶12} Winland testified on July 26, 2011, he worked at a football coaching clinic in Hudsonville, Michigan. While at the clinic, the actor "Shane Diesel" was mentioned during a conversation with other coaches. That evening in his hotel room, Winland performed a Google search of "Shane Diesel" on the school laptop. Winland testified he clicked on a Wikipedia link to view information about Shane Diesel. The cached temporary internet files on the school laptop computer also indicate Winland clicked on a link for the "Internet Movie Database." Winland testified that when he clicked on one link on the Wikipedia page, "porn thumbnail pop-ups" appeared on his computer.

{¶13} After discovering the images, the IT department went to the school principal. The school principal informed the Superintendent. On August 19, 2011, a meeting was held at the high school office with the Superintendent and Winland. During the meeting, Winland admitted there was inappropriate content on the computer and apologized. Winland offered to resign at the meeting, but later withdrew his offer of resignation. On August 26, 2011, the Superintendent advised Winland by letter he was recommending the BOE consider suspension and/or termination proceedings with respect to Winland's teaching contract.

{¶14} The January 27, 2012 referee's report and recommendation utilized R.C. 3319.16 in determining whether the BOE had good and just cause for terminating Winland's teaching contract. The referee considered Winland's school record. The referee found Winland's actions could give rise to suspension or termination of his teaching contract, but the mitigation factors suggested a suspension rather than termination. The referee recommended Winland receive a suspension of 45 days without pay for insubordination for his failure to return his computer in a timely fashion

and a suspension of 45 days without pay for inappropriate use of his school computer. The referee also recommended Winland be banned from removing school property from school premises, Winland take continuing education courses, and Winland apologize in writing to the school staff.

{¶15} On February 15, 2012, the BOE adopted Resolution 2012-254, wherein the BOE accepted the findings of fact of the referee but rejected the conclusion of the referee. The BOE determined the contract of Winland was terminated, effective immediately, for good and just cause.

{¶16} Winland filed a notice of appeal of the BOE's disciplinary action to the Tuscarawas County Court of Common Pleas. In his complaint, Winland requested the trial court reverse the decision of the BOE to terminate his contract, reinstate Winland to his position with full back pay and benefits, physically expunge all charges and record of the hearing before the referee, and reimbursement of all costs to Winland. The parties did not offer additional evidence to the trial court. The trial court relied on the evidence presented to the referee.

{¶17} On September 12, 2012, the trial court issued its decision. Utilizing R.C. 3319.16, the trial court reviewed the evidence and found Winland's conduct in viewing the images was not hostile to the community and was private conduct that had no impact on his professional duties. The trial court reversed the decision of the BOE to terminate Winland's contract and reinstated Winland to his former position, with full back pay and benefits.

{¶18} It is from this decision the BOE now appeals.

**ASSIGNMENTS OF ERROR**

{¶19} The BOE raises four Assignments of Error:

{¶20} "I. THE LOWER COURT PREMISED ITS DECISION ON A RIGHT TO PRIVACY THAT DOES NOT EXIST.

{¶21} "II. THE LOWER COURT'S DETERMINATION THAT MR. WINLAND'S CONDUCT WAS PRIVATE AND THEREFORE NOT HOSTILE TO THE COMMUNITY ARBITRARILY IGNORES MATERIAL AND UNDISPUTED EVIDENCE.

{¶22} "III. THE LOWER COURT'S ORDER ARBITRARILY IGNORES THE APPROPRIATE STANDARD OF REVIEW.

{¶23} "IV. THE LOWER COURT'S ORDER IS NOT BASED ON ANY CASE LAW, STATUTE OR CONSTITUTIONAL PROVISION AND CONSTITUTES A DENIAL OF DUE PROCESS."

**ANALYSIS**

*STANDARD OF REVIEW*

{¶24} The Ohio Teacher Tenure Act, contained in Ohio Revised Code Chapter 3319, governs the employment of public school teachers in Ohio. R.C. 3319.16 outlines the procedural requirements that a board of education must follow before a teacher's contract may be terminated for disciplinary reasons. The statute provides, "[t]he contract of any teacher employed by the board of education of any * * * school district may not be terminated except for good and just cause."[1]

---

[1] R.C. 3319.16 was amended effective October 16, 2009. Prior to the amendment, the statute stated that "the contract of any teacher may be terminated only for gross inefficiency or immorality; for willful and persistent violations of reasonable regulations of the board of education; or for other good and just cause."

{¶25} Before terminating a teacher's contract, the employing board of education must furnish the teacher with written notice of its intention to terminate the contract containing the grounds for action. R.C. 3319.16. The teacher may file a written demand for a hearing before the board or before a referee. *Id.* If an evidentiary hearing is conducted by a referee, the referee must file a report with the board of education with the referee's recommendation for discipline. *Id.* The board may then elect to accept or reject the referee's recommendation.

> The decision to terminate a teacher's contract is comprised of two parts: (1) the factual basis for the allegations giving rise to the termination; and (2) the judgment as to whether the facts, as found, constitute gross inefficiency, immorality, or good cause as defined by statute. The distinction between these two is important in understanding the respective roles of the school board and of the statutory referee in the termination process. * * * The referee's primary duty is to ascertain facts. The board's primary duty is to interpret the significance of the facts.

*Aldridge v. Huntington School Dist.*, 38 Ohio St.3d 154, 157-158, 527 N.E.2d 291, 294 (1988).

{¶26} The *Aldridge* court held in the syllabus:

> In teacher contract termination disputes arising under R.C. 3319.16:

> 1. The referee's findings of fact must be accepted unless such findings are against the greater weight, or preponderance, of the evidence;

2. A school board has the discretion to accept or reject the recommendation of the referee unless such acceptance or rejection is contrary to law.

{¶27} In *Graziano v. Amherst Exempted Village Bd. of Edn.*, the Supreme Court said that the "report and recommendation undertaken by the referee pursuant to R.C. 3319.16 must be considered and weighed by the board of education. * * * [D]ue deference must be accorded to the findings and recommendations of the referee * * * who is best able to observe the demeanor of the witnesses and weigh their credibility." 32 Ohio St.3d 289, 293, 513 N.E.2d 282 (1987). *Graziano* noted that the board is not bound by the recommendations rendered by the referee, but that the board "should, in the spirit of due process, articulate its reasons therefore" if it rejects the recommendations. *Id.*; *Aldridge v. Huntington School Dist.*, 38 Ohio St.3d at 157, 527 N.E.2d 291.

{¶28} A teacher whose contract has been terminated may appeal the board of education's decision to the local court of common pleas. The trial court will examine the transcript and record of the hearings; however, the trial court may hold additional hearings as it considers advisable, at which it may consider other evidence in additional to the transcript and the record. R.C. 3319.16. The trial court then engages in a hybrid exercise, encompassing "characteristics both of an original action with evidence presented and a review of an administrative agency's decision based upon a submitted record." *Douglas v. Cincinnati Bd. of Edn.*, 80 Ohio App.3d 173, 177, 608 N.E.2d 1128, 1131(1st Dist.1992). Based upon this review, "[t]he Common Pleas Court may reverse an order of termination of a teacher's contract, made by a Board of Education, where it

finds that such order is not supported by or is against the weight of the evidence. (Section 3319. 16, Revised Code, construed and applied.)" *Hale v. Bd. of Edn., City of Lancaster,* 13 Ohio St. 2d 92, 234 N.E. 2d 583 (1968), paragraph one of the syllabus. The teacher or board of education may appeal from the court of common pleas' decision. R.C. 3319.16.

{¶29} The Supreme Court of Ohio has delineated the standard of review and the role of a court of appeals:

> If the judgment of the court of common pleas is then appealed to the court of appeals, review in the appellate court is strictly limited to a determination of whether the common pleas court abused its discretion. This scope of review is, of course, extremely narrow. The term 'abuse of discretion' has been defined as implying "'not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'"
> (Citations omitted.)

*Graziano v. Amherst Exempted Village Bd. of Edn.*, 32 Ohio St.3d 289, 295, 513 N.E.2d 282 (1987).

{¶30} Thus, unless this court determines the trial court abused its discretion, we are compelled to affirm its decision as "the court of appeals may not engage in what amounts to a substitution of judgment of the trial court in an R.C. 3319.16 proceeding." *Id.* at 294, 513 N.E.2d at 286.

> "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. * * * It is to be expected that most instances of abuse of discretion will result in decisions that are

simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.

*Freshwater v. Mt. Vernon City School Dist. Bd. of Edn.,* 5th Dist. Knox No. 2011-CA-00023, 2012-Ohio-889, ¶ 21 citing *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601 (1990).

{¶31} We consider the BOE's four Assignments of Error under this narrow standard of review. For ease of discussion, we consider the four Assignments of Error together.

*GOOD AND JUST CAUSE*

{¶32} The trial court, in its September 12, 2012 judgment entry, reviewed the relevant case law as to the termination of a teacher's contract. R.C. 3319.16 states, "[t]he contract of any teacher employed by the board of education of any * * * school district may not be terminated except for good and just cause." The Ohio Supreme Court in *Hale v. Bd. of Edn., City of Lancaster* defined "good and just cause" as a "fairly serious matter." 13 Ohio St.2d 92, 98-99, 234 N.E.2d 583 (1968). Ohio appellate courts have further explained the meaning of R.C. 3319.16 that "in order to constitute immorality and good and just cause within the statutory meaning of those terms, the conduct complained of must be hostile to the school community and cannot be some

private act which has no impact on the teacher's professional duties." *Florian v. Highland Local Bd. of Edn.*, 24 Ohio App.3d 41, 42, 493 N.E.2d 249 (9th Dist.1983); *Bertolini v. Whitehall City School Dist. Bd. of Edn.*, 139 Ohio App.3d 595, 744 N.E.2d 1245 (10th Dist. 2000); *Oleske v. Hilliard City School Dist. Bd. of Edn.*, 146 Ohio App.3d 57, 65, 746 N.E.2d 1110 (10th Dist. 2001).

{¶33} The trial court may reverse an order of termination of a teacher's contract where it finds that such order is not supported by or is against the weight of the evidence. In the present case, the evidence presented to the trial court consisted of the record established before the referee. The trial court found:

> FINDS that the evidence presented to the Referee clearly and convincingly demonstrates that Winland's conduct in viewing sexually explicit images via a school-issued computer was **private** conduct in which Winland engaged, **not** school property, that did **not** impact his professional duties or his students and cannot, under any reasonable standard or test, be construed as "hostile to the community." The private sexual practices or proclivities of educators, if perchance revealed or learned, cannot serve as a predicate for Board discipline if that conduct has not implicated or transgressed the sacred boundaries of students and school. To conclude otherwise invites the spector [sic] of Orwellian concepts of "big brother" and "thought police" bleeding into the Board-teacher relationship and sowing seeds of inevitable discord and distrust – all to the ultimate detriment of their joint mission – to provide a quality

educational environment in which both teachers and students can thrive

and reach their full potential. (Emphasis sic.)

{¶34} The BOE argues in its first and second Assignments of Error the trial court abused its discretion as to its analysis of whether Winland committed a private act. The BOE argues that in finding Winland committed a private act, the trial court created a right of privacy for Winland that does not exist. The BOE cites to numerous cases that state an employee using an employer-provided computer has no expectation of privacy for the data on the computer. We do not disagree with those statements of law. However, the issue in this case is not about Winland's expectation of privacy when he used a school-issued computer. The issue is whether Winland committed a private act that impacts his professional duties as a teacher. The private act contemplated by case law is not to be considered in a vacuum; the private act must be considered in relation to the impact it may have on the teacher's professional duties and whether the act is hostile to the school community. The standard is further defined as a "fairly serious matter."

{¶35} The facts of this case are not in dispute. Winland viewed sexual images on a school-issued laptop computer. At the time he viewed the images, however, Winland was on summer break in Michigan participating in a non-school related football clinic. Did the trial court abuse its discretion in finding this factual scenario did not rise to the level of a private act that impacted Winland's duties as a teacher and was not hostile to the school community?

{¶36} What constitutes "good and just cause" can depend on the context and unique facts of each case. *Lanzo v. Campbell City School Dist. Bd. of Edn.*, 7th Dist.

Mahoning No. 09 MA 154, 2010-Ohio-4779, ¶ 18.   It is instructive, however, to review the related case law to determine what has been held "good and just cause" for termination.

{¶37} In *Bertolini v. Whitehall City School Dist. Bd. of Edn.*, 139 Ohio App.3d 595, 744 N.E.2d 1245 (10th Dist.2000), the board of education terminated the contract of the associate superintendent because he had an adulterous affair with another school district employee.   The 10th District Court of Appeals reversed the decision to terminate the contract because it found the affair was a private act that did not seriously affect the superintendent's professional duties and did not create hostility in the school community.   The 10th District Court of Appeals affirmed the decision of the board of education to terminate a teacher's contract in *Oleske v. Hilliard City School Dist. Bd. of Edn.*, 146 Ohio App.3d 57, 65, 746 N.E.2d 1110 (10th Dist.2001).   The teacher was cited for multiple instances of telling jokes to students that contained sexual content and ethnic insensitivity, and multiple instances of intentionally mispronouncing a fellow teacher's name as "turd" in front of her students.   *Id.* at 59-60.   The teacher had a good teacher record for over 20 years.   The board of education accepted the referee's recommendation that the teacher's actions constituted "good and just cause" for termination.

{¶38} The 12th District Court of Appeals in *Kitchen v. Bd. of Edn., Fairfield City School Dist.*, 12th Dist. Butler No. CA2006-09-234, 2007-Ohio-2846, the court affirmed the board of education decision to terminate an assistant superintendent's contract.   In that case, the assistant superintendent was observed to be under the influence of alcohol at the high school football game.   She left the game at halftime and joined

friends for additional drinks. On her way home at 2:00 a.m., she was stopped and charged with OVI. *Id.* at ¶ 2. The assistant superintendent concealed her arrest from the superintendent. The referee recommended the assistant superintendent's contract be reinstated but the board of education rejected the recommendation and terminated the assistant superintedent's contract. *Id.* at ¶ 9-10. The trial court and court of appeals affirmed the decision of the board of education.

{¶39} A review of the case law in which the appellate court affirmed a board of education's decision to terminate an employee shows that the teacher's behavior had or could have had a serious effect on the school system. *Bertolini*, 139 Ohio App.3d 595, 608. In the present case, the trial court found the weight of the evidence demonstrated Winland's actions did not occur on school property and did not involve any students. Winland did not commit a criminal act in viewing the images. The trial court considered the appropriate standard of review in making its decision to find Winland's actions were a private act that had no impact on his professional duties as a teacher and not hostile to the school community. We find no abuse of discretion in the trial court's conclusion that the weight of the evidence did not support the BOE's decision that Winland's actions constituted a "fairly serious matter" and rose to the level of "good and just cause" for termination.

{¶40} The four Assignments of Error of Defendant-Appellant Strasburg-Franklin Local School District Board of Education are overruled.

## CONCLUSION

{¶41} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Hoffman, P.J. and

Wise, J., concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. JOHN W. WISE