[Cite as *Kaplack v. Medina City School Dist. Bd. of Edn.*, 2025-Ohio-221.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

NICHOLAS KAPLACK

    Appellant/Cross-Appellee

v.

MEDINA CITY SCHOOL DISTRICT
BOARD OF EDUCATION

    Appellee/Cross-Appellant

C.A. Nos.    2024CA0002-M
              2024CA0003-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    2023-CIV-0418

DECISION AND JOURNAL ENTRY

Dated: January 27, 2025

STEVENSON, Presiding Judge.

**{¶1}** Plaintiff-Appellant/Cross-Appellee, Nicholas Kaplack ("Kaplack"), and Defendant-Appellee/Cross-Appellant, Medina City School District Board of Education ("Board"), appeal the judgment of the Medina County Court of Common Pleas that reversed the Board's resolution to terminate Kaplack's supplemental head varsity baseball coaching contract. For the reasons that follow, this Court affirms in part, reverses in part, and remands for further proceedings.

I.

**{¶2}** Kaplack is a teacher with the Medina City School District. He was also a coach in the Medina baseball program for 24 years, serving for 16 years as the head varsity baseball coach. His most recent season prior to this action was the 2020-2021 season.

**{¶3}** The specific event giving rise to the Board's termination of Kaplack's supplemental coaching contract occurred on May 19, 2021, when the Medina High School baseball team played

an away game against Hudson High School and suffered its fourth loss in a row. When the bus arrived back in Medina, Kaplack gave the team a speech about the overall low morale and performance of the team. The speech was captured on video. According to Kaplack, the speech was about accountability and asked the players to "hit the reset button[.]"

{¶4} An investigation of Kaplack's bus speech was initiated when a parent filed a harassment complaint with the Board in July 2021 pursuant to Board Policy 5517. A few days later, Assistant Superintendent Katherine Quallich ("Quallich") invited Kaplack to a meeting to discuss the allegations. The athletic director, a representative from the Medina Teachers Association, and a consultant with the Ohio Education Association were also present. During the meeting, Quallich informed those present about the video and later emailed it to Kaplack. When Kaplack reviewed the video, he noticed the Board had not provided the full footage of the entirety of his speech which began when the bus left Hudson. He told the representative from the Medina Teachers Association about the missing part of the video but took no further action at that time.

{¶5} After her investigation, Quallich issued a report on the harassment complaint in August 2021. She determined that Kaplack's conduct in the bus video did not rise to the level of harassment required by Board Policy 5517 and deemed the complaint unsubstantiated. However, while Quallich did not find that Kaplack engaged in harassment, her investigation uncovered incidents of notable concern that she considered to constitute good and just cause for recommending termination of Kaplack's supplemental coaching contract, namely that the post-game speech inappropriately disparaged the players' parents for their interference with the team and that certain players were belittled in front of the team for poor athletic performances. In Quallich's opinion, Kaplack inappropriately directed his frustrations with parents at the players,

placing the players in an untenable position between two adult authorities. Quallich did not initially share these additional concerns with Kaplack.

{¶6}   After receiving Quallich's report, Kaplack considered the matter closed as the complaint was deemed unsubstantiated, and he was not disciplined nor told to discontinue his coaching duties or to cease interacting with the players.  He proceeded to prepare for the next baseball season.  He began hitting and pitching practices, engaged the players in community service projects, brought in speakers, attended a coach's clinic, and held a parent meeting.

{¶7}   The athletic director gave Kaplack an evaluation in December 2021 that outlined his coaching performance across numerous categories.  The evaluation showed him as skilled in most areas but also noted areas that needed improvement as related to his demeanor with the players and parents.  According to the Board, the areas of concern outweighed the areas of skill.

{¶8}   On February 1, 2022, the District Superintendent provided Kaplack with notice of his intention to recommend termination of Kaplack's supplemental contract as head varsity baseball coach ("Notice").  The Notice did not pertain whatsoever to Kaplack's teaching position. On February 7, 2022, the Board adopted the Superintendent's recommendation and passed a resolution of intent to terminate Kaplack from the head varsity baseball coach position.

{¶9}   Kaplack timely requested a hearing before a Referee.  A two-day evidentiary hearing was held before the appointed Referee in December 2022.  Prior to the hearing, Kaplack requested the entire video footage beginning from the time the bus was preparing to leave Hudson; however, the Board was unable to provide it because it was destroyed prior to Kaplack's request under the Board's records disposal policy. According to Kaplack, the additional footage would have provided context to his speech by connecting it to the issues that were discussed before the team left Hudson, namely that the players felt pressure and negativity from their parents.

Kaplack's explanation of the speech was that he was merely continuing the conversation about parental pressure and was also following the team's directive to hold them accountable for their failures rather than permit them to blame others for their lackluster performance. Quallich did not request the additional footage during her own investigation of the harassment complaint because the only incident reported as grievous was Kaplack's speech upon the bus's arrival in Medina.

{¶10} The Referee issued a report and recommendation confirming the Board's decision to terminate Kaplack. The Referee's analysis was based on a guest essay in the March 23, 2023, edition of the New York times authored by the President of Notre Dame University and its Athletic Director.  In the essay, the coach likened the locker room to a classroom where lessons about athletics were deemed an essential part of the mission of college education.  After quoting an excerpt from the article, the Referee then stated he would "discuss Kaplack as a teacher[,]" then proceeded to analyze Kaplack's conduct in the context of the classroom.  The Referee ultimately determined that "in the last analysis . . . it is hard to find 'teaching' in [Kaplack's] video comments."  The relevant portions of the Referee's opinion are as follows:

> In this case, the Board found that Kaplack's behavior on the bus on May 19, 2021 disparaged parents and students, to the point of constituting "good and just cause" of a "fairly serious matter," for terminating his supplemental contract as head varsity baseball coach.

> Imagine that the video was not the baseball field but from a classroom.  Is it possible that a Board would put up with a teacher telling the students that their dads look "like little girls."  Imagine that the teacher advised that he was "sick of hearing the criticism from parents about his teaching" or telling students that he has "had it" with "has been parents" trying to tell him how to teach.

> The baseball diamond and the high school classroom are not perfectly analogous. But this is a high school baseball team, where academics are much more important than athletic performance.

> . . .

> The decision of the [Board] is confirmed.

{¶11} In May 2023 the Board passed a resolution adopting the Referee's report and recommendations and terminated Kaplack's supplemental coaching contract. Kaplack appealed to the Medina County Court of Common Pleas by filing a complaint pursuant to R.C. 3319.16. In his complaint, Kaplack sought reinstatement to a one-year supplemental contract and payment for the loss of salary incurred for the period from his suspension on February 7, 2022, through his time of reinstatement.

{¶12} Following the parties' submission of briefs, the Medina County Common Pleas Court issued an order overruling the Board's decision. Kaplack appeals, raising two assignments of error for our review. The Board cross-appeals, raising three assignments of error for our review. To aid our analysis, we will first address the Boards's cross-appeal.

## Board's Cross-Appeal

### ASSIGNMENT OF ERROR I

**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO ACCORD DUE DEFERENCE TO THE REFEREE'S FINDINGS OF FACT, OPINIONS, AND RECOMMENDATIONS.**

### ASSIGNMENT OF ERROR II

**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO ACCORD DUE DEFERENCE TO THE BOARD OF EDUCATION'S DECISION.**

{¶13} We will address the Board's first and second assignments of error in a consolidated fashion for ease of analysis as both the Board and the Referee reviewed the same evidence and made the determination that there was good and just cause for the termination of Kaplack's supplemental coaching contract.

{¶14} R.C. 3319.16 is the statutory mechanism for the board of education to terminate a teacher's contract. *Humphries v. Lorain City School Dist.*, 2019-Ohio-2263, ¶ 6 (9th Dist.). "That

statute pronounces that '[t]he contract of any teacher employed by the board of education of any city . . . school district may not be terminated except for good and just cause.'" *Id.*, quoting R.C. 3319.16. The parties agree that the "good and just cause" standard applies to Kaplack's coaching contract. As remedial legislation designed to ensure public school teachers with some measure of security in their work, R.C. 3319.16 must be liberally construed in favor of teachers, those that it is designed to protect, in order to prevent arbitrary discharge from employment. *Brennan v. Vinton Cty. Local School Dist. Bd. of Edn.*, 18 Ohio St.3d 208, 209 (1985).

### Administrative Hearing

{¶15} Procedurally, prior to terminating a contract, the employing board must give the teacher a written notice of its intention to terminate that contains full specification of the grounds. *Humphries* at ¶ 6. The teacher then has the opportunity to demand a hearing before either the board or a referee. *Id*. "After a hearing by a referee, the referee shall file a report within ten days after the termination of the hearing." R.C. 3319.16. The hearing must be "confined to the grounds given for the termination" as set forth in the written notice furnished to the teacher by the employing board. *Id*. The board has the burden of establishing the facts and the grounds to support its intended termination action. *Hale v. Bd. of Edn., City of Lancaster*, 13 Ohio St.2d 92, 99 (1968).

{¶16} "'After consideration of the referee's report, the board, by a majority vote, may accept or reject the referee's recommendation on the termination of the teacher's contract.'" *Humpries* at ¶ 7, quoting R.C. 3319.16. "'The referee's findings of fact must be accepted unless such findings are against the greater weight, or preponderance, of the evidence[.]'" *Humphries* at ¶ 7, quoting *Aldridge v. Huntington Local School Dist. Bd. of Edn.,* 13 Ohio St.3d 154 (1988), paragraph one of the syllabus. "[A] board 'has the discretion to accept or reject the

recommendation of the referee unless such acceptance or rejection is contrary to law.'" *Humphries* at ¶ 7, quoting *Aldridge* at paragraph two of the syllabus.

**Appeal to the Common Pleas Court**

{¶17}  "Pursuant to R.C. 3319.16, any teacher affected by a contract termination has the right to appeal the order of termination to the court of common pleas." *Humphries* at ¶ 8.  "The scope of the common pleas court's review does not provide for a trial de novo." *Id.*, quoting *Graziano v. Bd. of Edn.*, 32 Ohio St.3d 289, 293 (1987).  The common pleas court may reverse a board's order terminating a teacher's contract if the board's order is not supported by or is against the weight of the evidence. *Hale* at paragraph one of the syllabus. The common pleas court cannot substitute its judgment for the judgment of the board where a fair administrative hearing is had and there is substantial and credible evidence in the record to support the board's decision.  *Fox v. Bd. of Edn. of the Huron City School Dist.*, 2017-Ohio-7984, ¶ 18 (6th Dist.).

**Appellate Review**

{¶18}  "Either the teacher or the board may appeal the common pleas court's decision granting or denying the relief prayed for in the complaint." *Humphries* at ¶ 9, citing R.C. 3319.16. "The appellate court's review of this special proceeding is rather narrow and limited to a review for abuse of discretion." *Id.*, citing *Graziano* at 294.

{¶19}  "The term 'abuse of discretion' connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from substituting its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).  Although *Blakemore* is often cited as the general standard for

reviewing discretionary decisions, the Ohio Supreme Court has provided additional guidance about the nature of an abuse of discretion:

> Stated differently, an abuse of discretion involves more than a difference in opinion: "'the term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations.'" *State v. Jenkins*, 15 Ohio St.3d 164, 222 (1984), quoting *Spalding v. Spalding*, 355 Mich. 382, 384 (1959). For a court of appeals to reach an abuse-of-discretion determination, the trial court's judgment must be so profoundly and wholly violative of fact and reason that "'it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" *Id.*, quoting *Spalding* at 384-385.

*State v. Weaver*, 2022-Ohio-4371, ¶ 24.

### **Good and Just Cause**

**{¶20}** R.C. 3319.16 prevents a teacher's contract from being terminated "except for good and just cause." Although "good and just cause" is not statutorily defined, the Supreme Court of Ohio has construed it to mean "a fairly serious matter." *Hale*, 13 Ohio St.2d at 98-99. Generally, "[w]hat constitutes 'good and just cause' depends on the context and unique facts of each case." *Hiss v. Perkins Local School Dist. Bd. of Edn.*, 2019-Ohio-3703, ¶ 149 (6th Dist.).

**{¶21}** Courts have found "good and just cause" to include behavior that could have caused serious harm to a student. *See Hiss* (teacher gave or allowed students access to prescription analgesic patches over a period of three years); *Ricchetti v. Cleveland City School Dist. Bd. of Edn.*, 1994 WL 66227 (8th Dist. Mar. 3, 1994) (teacher engaged in a high-speed chase to avoid apprehension by police while detaining a teenager in his car); *Brownfield v. Warren Local School Dist. Bd. of Edn.*, 1990 WL 127054 (4th Dist. Aug. 28, 1990) (teacher risked the physical safety of a student by requiring the student to touch the end of a paper clip into one of the holes of a 110-volt electrical outlet).

{¶22} "[A]ppellate courts have further explained . . . that 'in order to constitute . . . good and just cause within the statutory meaning of those terms, the conduct complained of must be hostile to the school community and cannot be some private act which has no impact on the [coach's] professional duties.'" *Winland v. Strasburg-Franklin Local School Dist. Bd. of Edn.*, 2013-Ohio-4670, ¶ 32 (5th Dist.), quoting *Florian v. Highland Local Bd. of Edn.*, 24 Ohio App.3d 41, 42 (9th Dist. 1983); *Bertolini v. Whitehall City School Dist. Bd. of Edn.,* 139 Ohio App.3d 595 (10th Dist. 2000); *Oleske v. Hilliard City School Dist. Bd. of Edn.*, 146 Ohio App.3d 57, 65 (10th Dist. 2001).

### The Trial Court's Opinion

{¶23} The trial court conducted its own review of the evidence, as required by R.C. 3319.16, and determined that "the findings of fact and recommendations by [the Referee] were not supported by and were against the weight of the evidence[]" and that "the [Board's] acceptance of the Referee's recommendations was contrary to law." In so determining, the trial court opined as follows in relevant part:

> The key focus of the termination case was the partial bus video, where [Kaplack's] comments were deemed by the Board as constituting a terminable offense.
>
> . . . The partial bus video lacks context, as the preceding footage was not preserved by the district. [Kaplack] asserts that the missing video would have shown players facing pressure and negativity from their parents, providing context to his remarks in the available video. . . .
>
> The argument against termination also includes a critique of the referee's report, as it used an inappropriate analogy by comparing teachers to coaches. [Kaplack] was acting as a coach, not a teacher, and the referee's analogy is not applicable. Additionally, the referee lacked the proper analysis . . . regarding the unique nature of coaching compared to teaching.
>
> . . .

. . . In this case, [Kaplack's] conduct in having a frank discussion with his players after a series of losses was not nearly as egregious as the *Sasack* case, where Coach Sasack was ejected from a game, and where the Court still found no just cause.[1]

This Court agrees the Board has failed to meet the burden of establishing 'good and just cause' for terminating [Kaplack's] coaching contract based on the alleged terminable offense of the partial bus video. The Board's order is not supported by substantial or credible evidence, highlighting inconsistencies, lack of context, and misinterpretation of incidents.

## II.

{¶24} As a threshold matter, we note that the parties dedicate a considerable portion of their merit briefs to a discussion of prior incidents involving Kaplack's alleged misconduct as a coach dating back to 2015. Kaplack takes particular issue with the Board's Notice, which made several references to a "historical pattern" of conduct and the prior incidents. He argues that it was improper for the Board to rely upon those past incidents as a basis for his termination because he had been exonerated in each previous situation and was never subjected to any discipline or punishment. The Board insists that in terminating Kaplack and mentioning the prior incidents in the Notice, it was not attempting to punish him for those prior incidents, but rather, was merely pointing out that Kaplack had been given prior opportunities to correct his behavior.

{¶25} The Board affirmatively represented numerous times during the hearing before the Referee that its termination decision was based solely on Kaplack's bus speech and not the prior incidents. After a colloquy with counsel and much discussion around the allegations in the Notice, the Referee stated on the record that the only matter being considered as a basis for termination was the bus video. Neither the Referee's nor the trial court's written decisions were based on the

---

[1] In *Sasack v. Wellington Exempted Village School Dist. Bd. of Edn.*, Lorain C.P. Nos. 22CV205243, 22CA011931 (Nov. 23, 2022), the trial court overruled the Board's termination decision regarding the supplemental contract of a head varsity baseball coach, concluding that the use of colorful language and kicking dirt onto home plate after being ejected from a game for disagreement with an umpire's call did not constitute good and just cause.

prior incidents. These incidents were noted purely as factual background. Accordingly, our analysis will be confined to the bus speech.

{¶26} The Board argues that the trial court committed prejudicial error by substituting its own judgment for that of the Referee/Board instead of giving due deference to the Referee/Board's findings as required by law. In support of its argument, the Board states that the Referee reviewed and appropriately considered the video through the lens of academics, and in weighing Kaplack's testimony, properly confirmed the Board's assertion that Kaplack's behavior constituted "good and just cause" for termination. According to the Board, the trial court inserted its own credibility assessment when it opined that "[t]he partial bus video lacks context, as the preceding footage was not preserved by the district[,]" and is "not supported by substantial or credible evidence" because the missing footage would somehow "provid[e] context to [Kaplack's] remarks in the available video." The Board submits that the trial court's rationale does not meet the qualifications for substituting its judgment for that of the Board because a fair hearing was held and there was substantial and credible evidence in the record to support the Board's decision. *See Fox*, 2017-Ohio-7984, at ¶ 18 (6th Dist.). The Board argues that whether the video lacked context is unimportant and that, standing alone, the bus speech constitutes substantial and credible evidence because Kaplack did not deny that he engaged in the behavior seen in the video.

{¶27} As previously noted, the trial court must accept the referee's findings of fact only if they are supported by the greater weight or preponderance of the evidence. *Humphries*, 2019-Ohio-2263, at ¶ 7 (9th Dist.). Therefore, the trial court is permitted to weigh the evidence and make credibility determinations. *Graziano*, 32 Ohio St.3d at 293 ("While an appeal before the common pleas court . . . does not include a right to a trial *de novo*, . . . the clear statutory language does however empower the court to weight the evidence . . . ."). Thus, in rejecting the Referee's

recommendation for the reasons stated in its opinion, the trial court was acting within its permissible scope of review to weigh the evidence and make its own credibility determinations and was not substituting its judgment for that of the Board/Referee.

{¶28} Furthermore, the underlying premise of the Board's argument is that the Referee's analysis in the context of teaching was proper. However, in ruling that "[t]he decision of the [Board] is confirmed" the Referee merely made a conclusory statement without engaging in any independent analysis of whether Kaplack's conduct met the definition of "good and just cause" as defined under the law. Instead, as the trial court noted, the Referee analogized coaching to teaching based on a New York Times article about college coaching that was completely irrelevant in law or fact to the statutory protections provided to a teacher under R.C. 3319.16.  The subject of this case is Kaplack's supplemental coaching contract, not his teaching contract. Kaplack's classroom abilities and record of dealing with students in his capacity as a teacher were not the issue that was being evaluated in determining whether his supplemental coaching contract should be terminated. Yet, the classroom was the lens through which the Referee analyzed this matter utilizing a newspaper article on a different subject instead of supporting his analysis with legal authorities involving "good and just cause" under R.C. 3319.16.  Therefore, the trial court did not abuse its discretion in concluding that the Referee's reliance upon this newspaper article was not substantial and credible evidence that supported Kaplack's termination.

{¶29} The Board further argues that the trial court inappropriately substituted its judgment in determining that the partial video lacked context without the missing footage.  The trial court's rationale in determining that the Board's order was not supported by substantial and credible evidence was that the Board's order was based on the "alleged terminable offense of the partial bus video" and  highlighted inconsistencies, lacked context, and misinterpreted incidents. In

arriving at its conclusion, the trial court stated that it had reviewed the record, which included the hearing transcript. During the hearing, Kaplack testified to what the missing video would have shown. He testified that he believed he was having a nice conversation with the players. He first asked them if they felt he was putting too much pressure on them and no one responded. He then asked if they were getting pressure from home and every hand went up. Kaplack testified that this was the first time in his career that the whole group felt that way, which was the reason for his later speech that was captured in the partial video. Based on that testimony, the trial court was within its discretion to conclude that Kaplack was credible, and that when viewed as a whole, the entire video footage would not have constituted substantial and credible evidence of "good and just cause" for Kaplack's termination.

{¶30} Accordingly, based on the foregoing, we conclude that the trial court did not substitute its judgment for that of the Referee/Board. The Board's first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO CORRECTLY APPLY THE APPLICABLE LEGAL STANDARDS.**

{¶31} Under the Board's third assignment of error, the Board argues that the trial court abused its discretion by (1) by interpreting "good and just cause" without taking into account behavior that is hostile to the school community, and (2) by relying on facts not in evidence.

{¶32} The Board's first argument is that the uncontroverted facts demonstrate that Kaplack behaved in a hostile manner to the school community, and if the trial court had applied the law to the facts of this case, it would have arrived at that conclusion. Specifically, the Board maintains that Kaplack's mocking and disparaging parents to their children during a post-game

speech qualifies as hostile to the school community, and therefore, satisfies the definition of "good and just cause."

{¶33}  The Ohio Supreme Court held that "good and just cause" must be "a fairly serious matter." *Hale*, 13 Ohio St.2d. at 98-99.  The trial court defined "good and just cause" as "a fairly serious matter" and "flagrant or outrageous or at least persistent" with references to case law that construed contract terminations under a "good and just cause" analysis. *Ellsworth v. Streetsboro City School Dist. Bd. of Edn.*, 2019-Ohio-4731 (11th Dist.); *Hale;* and *Imm v. Bd. of Edn of Newbury Local School Dist.*, 1986 WL 14335 (11th Dist. Dec. 5, 1986). The trial court ultimately determined that the weight of the evidence established Kaplack's actions on the bus video were a "frank discussion with his players" that were "not nearly as egregious" as the *Sasack* case in which the Lorain County Court of Common Pleas found no just cause for termination where the coach had been ejected from a game for using colorful language and kicking home plate. *See Sasack*, Lorain C.P. Nos. 22CV205243, 22CA011931 (Nov. 23, 2022). Thus, while the trial court's decision did not specifically address whether Kaplack's conduct was hostile to the community, it was supported by applicable law on the subject of "good and just cause," including the Ohio Supreme Court's *Hale* case, and therefore, was not "unreasonable, arbitrary, or unconscionable." *Blakemore*, 5 Ohio St.3d at 219.

{¶34}  Moreover, Ohio appellate courts have addressed the meaning of "hostile to the community." *See Bertolini,* 139 Ohio App.3d 595 (associate superintendent terminated because he had an adulterous affair with another school district employee); *Oleske,* 146 Ohio App.3d 57 (termination upheld for multiple instances of telling jokes to students that contained sexual content, ethnic insensitivity, and intentionally mispronouncing a fellow teacher's name as "Turd"); *Kitchen v. Bd. of Edn. of Fairfield City School Dist.*, 2007-Ohio-2846 (12th Dist.) (termination of assistant

superintendent affirmed for OVI charge); *Hykes v. Bd. of Edn. of Bellevue City School Dist.*, 2012-Ohio-6059, ¶ 26 (6th Dist.) (termination upheld where teacher regularly used the phrase "mother f - - -er" to describe his boss; asked female employees to participate in a wet t-shirt contest, and made comments to other employees concerning the size of his genitals); *Florian,* 24 Ohio App.3d 41 (termination upheld as hostile to the community where coach instructed a team member to weigh-in for another team member so that the latter member who was overweight could wrestle in his weight class). In sum, "the case law in which the appellate court affirmed a board of education's decision to terminate an employee shows that the teacher's behavior had or could have had a serious effect on the school system." *Winland*, 2013-Ohio-4670, at ¶ 39 (5th Dist.), citing *Bertolini* at 608.

{¶35} We have reviewed the record below, including the hearing transcript, exhibits, the bus video, and the parties' trial court briefs. While nothing in this opinion should be construed as a determination that Kaplack's behavior was appropriate, when compared to the situations in the cases cited above where the appellate court upheld the board's termination decisions for conduct hostile to the community, we do not believe Kaplack's conduct rose to the same level. Therefore, this argument is not well-taken.

{¶36} The Board's second argument is that the trial court abused its discretion because it based its decision on an allegedly missing video that it determined would have provided context to Kaplack's remarks in the bus speech, and in doing so, the trial court speculated as to the content of a video not submitted into evidence. We disagree because, as previously noted and as the Board itself acknowledged, Kaplack testified to the contents of his earlier conversation with the players from the time the bus left Hudson. Thus, the transcript on record contains evidence which, if believed, reflects what the missing video would have shown. This argument is not well-taken.

**{¶37}** On this record we cannot say that the court abused its discretion in reversing the Board's decision as not supported by substantial and credible evidence. The trial court's judgment was not "so profoundly and wholly violative of fact and reason that it evidences not the exercise of will but perversity of will" and constitutes an abuse of discretion. *Weaver*, 2022-Ohio-4371, at ¶ 24. Accordingly, the Board's third assignment of error is overruled.

### Kaplack's Appeal

### ASSIGNMENT OF ERROR I

**THE COMMON PLEAS COURT ABUSED ITS DISCRETION BY NOT REINSTATING [KAPLACK'S] SUPPLEMENTAL CONTRACT AFTER DETERMINING THAT THE BOARD'S ORDER WAS NOT SUPPORTED BY SUBSTANTIAL OR CREDIBLE EVIDENCE.**

### ASSIGNMENT OF ERROR II

**THE COMMON PLEAS COURT ABUSED ITS DISCRETION BY NOT REINSTATING [KAPLACK'S] SUPPLEMENTAL CONTRACT AFTER DETERMINING THAT THE BOARD'S ORDER WAS NOT SUPPORTED BY AND WAS AGAINST THE GREATER WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.**

**{¶38}** Kaplack's two assignments of error will also be addressed in a consolidated fashion as they contain similar evidentiary arguments.

**{¶39}** After overruling the Board's decision to terminate Kaplack, the trial court ordered that he was entitled to back-pay in the amount he would have earned had his supplemental contract been renewed for the 2021-2022 and 2022-2023 school years. Kaplack asks this Court to modify the trial court's journal entry to also reflect his reinstatement to a one-year supplemental coaching contract in addition to awarding him back-pay in the amount he would have earned had his supplemental contract been renewed for the 2021-2022, 2022-2023, and 2023-2024 (since Kaplack did not coach for 2023-2024) school years. Kaplack argues that it is well-established that back pay *and* reinstatement are the remedies for wrongful termination under R.C. 3319.16.

{¶40} In his complaint, Kaplack made two requests: (1) for an order reinstating him to a one-year supplemental head varsity baseball coach contract, and (2) for payment for any loss of salary incurred for the period from his suspension without pay through his reinstatement as the head varsity baseball coach. He made the same requests in his merit brief to the trial court. However, the trial court's ruling does not state whether Kaplack's supplemental coaching contract was reinstated. The ruling is silent in that regard and is limited to an award of back-pay in the amount Kaplack would have earned for the two seasons he did not coach during the pendency of the case.

{¶41} R.C. 3319.16 provides in relevant part that "[u]pon final hearing, the court *shall grant or deny* the relief prayed for in the complaint . . . ." (Emphasis added.) Thus, the trial court's remedy is to issue a decision granting or denying the relief prayed for in the complaint. *Bertolini v. Whitehall City School Dist. Bd. of Edn.*, 2003-Ohio-2578, ¶ 40 (10th Dist.). Here, the trial court granted Kaplack's request for back-pay but it neither granted nor denied his request for reinstatement. Therefore, though final, its ruling is incomplete.

{¶42} Furthermore, in addition to not ruling on the entirety of Kaplack's prayer for relief as required by R.C. 3319.16, the trial court's remedy is out of order with the sequence set forth in R.C. 3319.16. "R.C. 3319.16 provides that a teacher can either be terminated or be reinstated with back pay." *Elsass v. St. Marys City School Dist. Bd. of Edn.*, 2011-Ohio-1870, ¶ 67 (3d Dist.), citing *Vogelsang v. Toledo Bd. of Edn.*, 1986 WL 1288 (6th Dist. Jan. 31, 1986). R.C. 3319.16 states:

> If the decision, after hearing, *is against termination of the contract*, *the charges and the record of the hearing shall be physically expunged* from the minutes, *and*, if the teacher has suffered any loss of salary by reason of being suspended, the teacher shall be paid the teacher's full salary for the period of such suspension.

(Emphasis added.) "'The option of awarding back-pay is included within the statute where there is a determination that termination was not the proper remedy.'" *Elsass* at ¶ 67, quoting *Vogelsang* at \*5. "The statute *only* provides for lost salary reimbursement when the termination was found to be wrong *and the teacher is reinstated*." (Emphasis added.) *Id. Accord Sasack,* Lorain C.P. Nos. 22CV205243, 22CA011931 (Nov. 23, 2022) (trial court awarded appellant-varsity baseball coach back-pay *and* reinstated his supplemental contract upon determining that there was no just cause for termination).

{¶43} Considering Kaplack's prayer for relief and the provisions of R.C. 3319.16, it could be inferred that the trial court's award of back-pay necessarily included the reinstatement of Kaplack's supplemental contract. However, the appropriate analysis under R.C. 3319.16 was for the trial court to affirmatively make that determination. Although Kaplack has requested that this Court address the issue by modifying the trial court's judgment entry, this Court will not do so in the first instance. *See McCormick v. McCormick*, 2022-Ohio-3543, ¶ 10 (9th Dist.).

{¶44} Accordingly, based on the foregoing, Kaplack's first and second assignments of error are sustained on the basis of the trial court's failure to address the reinstatement of Kaplack's supplemental coaching contract in the first instance. The matter is remanded to the trial court for further proceedings consistent with this opinion.

III.

{¶45} The judgment of the Medina County Court of Common Pleas is affirmed in part, and reversed and remanded in part for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee/Cross-Appellant.

SCOT STEVENSON
FOR THE COURT

SUTTON, J.
CONCURS.

HENSAL, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

RACHEL M. REIGHT, Attorney at Law, for Appellant/Cross-Appellee.

DEREK L. TOWSTER, Attorney at Law, for Appellee/Cross-Appellant.